Arnold Nelson MAHLER

v.

Thomas SLATTERY, etc.

Arnold Nelson MAHLER

v.

Nathaniel NELSON et al.

Civ. A. Nos. 80–0155–R, 80–0266–R.

United States District Court,
E. D. Virginia,
Richmond Division.

May 5, 1980.

---

1. Unless otherwise stated, all statutory references are to the 1969 Revised Statutes of Missouri.

Arnold Nelson Mahler, pro se.

Robert W. Jaspen, Asst. U. S. Atty., Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

On April 18, 1980, the Court held a hearing on the plaintiff's motion for a temporary restraining order in this action. The following claims were raised and considered:

1. The plaintiff's incoming and outgoing legal mail was unlawfully interfered with;

2. The plaintiff was denied access to the prison grievance system; and .

3. 23 cartons of legal documents and 2 cartons of personal property were unlawfully confiscated from the plaintiff.

Testimony was offered by the plaintiff and the defendants. After hearing the evidence, the Court denied the plaintiff's motion for a temporary restraining order as to all claims. It is now appropriate to address the merits of the claims.

The evidence at the hearing showed that, if anything, the defendants went too far in accommodating the plaintiff with respect to his legal mail. The plaintiff himself acknowledged that his extensive involvement in litigation required him to send out an "inordinate" amount of legal correspondence. From the end of January, when the plaintiff arrived at Petersburg, until the first part of March, there was no question but that every piece of legal mail the plaintiff submitted was sent out at government expense. In fact, a streamlined procedure was put into effect whereby the plaintiff could deliver his outgoing mail directly to the mailroom where it would be weighed, stamped, and sent out for him. Other inmates were required to obtain stamps from their unit manager. The plaintiff's unit manager, Jerry Mondejar, testified that he simply could not keep up with the plaintiff's request for stamps and still perform his other duties. On March 5, a prison administrator, Robert Gunnell, assessed the situation and came to the conclusion that the plaintiff was abusing his privilege to mail legal correspondence at government expense. Mr. Gunnell gave instruc-

tions which would have limited the number of legal letters the plaintiff would be allowed to mail. The effect of Mr. Gunnell's instructions may or may not have been significant; Kathleen Kennedy, the plaintiff's initial caseworker, testified that the instruction from Mr. Gunnell was that the plaintiff would be allowed to mail five legal letters per day. As developed in the course of the testimony, however, even this effort to apply a reasonable restriction to the plaintiff's incredibly high volume of government-subsidized legal activity has ultimately not been carried out. The defendant, Nathaniel Nelson, the plaintiff's present case manager, testified that he has disregarded his superior's instruction and has mailed out every piece of the plaintiff's legal correspondence free of charge. This has occurred since the plaintiff was transferred to Mr. Nelson's unit on March 17. Any possible restriction of the plaintiff's mail privileges, therefore, took place between March 5 and March 16. The plaintiff has not shown and the testimony at the hearing did not reveal that he was prevented access to an attorney or to the courts due to the five letters per day limit. The Court also notes that George Antle, a witness called by the plaintiff, indicated that the plaintiff was allowed to mail letters in excess of the limit when he could show that the correspondence was necessary to meet an imminent court deadline. In light of Mr. Antle's testimony, the plaintiff will be required to demonstrate that his access to attorneys or to the courts was restricted between March 5 and March 16. Failure to so amend within 30 days will result in dismissal of this aspect of the complaint.

The Court has twice referred to legal mail as mail to an attorney or to the courts. At his hearing, the plaintiff argued for a more expansive definition which would encompass mail to members of Congress and also any individuals to whom he wished to address questions relating to a case. It is clear from the decision in *Crowe v. Leeke*, 550 F.2d 184 (4th Cir. 1977) that legal mail is correspondence to or from attorneys or court officials. *Id.* at 188. The Court will not review the plaintiff's claims that he has

not been allowed to send out at government expense mail to members of Congress or persons with information that might prove helpful in his litigation. This claim will be dismissed pursuant to 28 U.S.C. § 1915(d) (1970).

■ One other point has been raised by the plaintiff in regard to his mail. He maintains that mail addressed to him is being returned to the sender when arguably the contents of the letter are legal in nature. This problem arises principally because the plaintiff has refused to sign the standard form giving prison authorities his permission to open and read his incoming social and special mail. The reason the plaintiff gave for refusing to sign the form was that "special mail" is used at some points in the federal prison guidelines to refer to legal mail. The plaintiff fears that if he signs the form, his legal mail will be opened and read outside his presence. Thomas Slattery, Executive Assistant to the Warden at the Petersburg facility, testified at the hearing that, as used on the consent form, the term "special mail" does not include legal mail. Mr. Slattery stated that legal mail is only opened in the presence of the inmate and it is not read. At the hearing, the Court suggested to the plaintiff that he sign the consent form. If the plaintiff has not already done so, the Court will repeat that suggestion. The plaintiff will not be heard to complain of letters returned to the sender when the instrument for his relief is in his own hands.

It is recognized that, even after the plaintiff signs the consent form, the mail which is now being returned to the sender may be opened and read before it is delivered to the plaintiff. The plaintiff will then contend that the mail is legal in nature and should only be opened in his presence. The Court will have to deal with that problem when it arises, but the plaintiff is advised that his expansive view of what constitutes legal mail is due for reshaping.

■ The plaintiff also sought a temporary restraining order based on his allegation that he was being denied access to the

prison grievance system. As the testimony at the hearing revealed, prisoners at the Petersburg prison must submit a copy of a form called a "cop-out" in order to get a BP–9 form, which is the federal grievance form. According to Mr. Slattery, the cop-out puts the prison staff on notice of the problem so that an informal resolution may be attempted before resort is made to the grievance system. In his original pleadings, the plaintiff claimed that he had submitted numerous cop-outs but was never provided with grievance forms. He also alleged that he had submitted grievance forms which were not acted upon. At the hearing, the plaintiff testified that his counselor has provided him with a BP–9 form every time he has submitted a cop-out. The plaintiff indicated that his complaint concerned Mr. Nelson's refusal to supply BP–9 forms in response to cop-outs. Mr. Nelson testified, however, that under the procedures in effect at Petersburg, cop-outs must be submitted to a counselor. As the plaintiff's case manager, Mr. Nelson does not have authority to respond to the plaintiff's request for BP–9 forms. Despite this rule, and according to his own count, the plaintiff submitted 80 cop-outs to Mr. Nelson in the three week period prior to the hearing. The Court finds that the plaintiff did not follow the procedures in effect at the prison, and Mr. Nelson's failure to reply to the cop-outs does not give rise to a cause of action.

The plaintiff complained further that BP–9 forms which he submitted were returned to him with a note that he did not comply with the rule that the cop-out which a prisoner has submitted raising a particular complaint must be filed along with his BP–9 form. Mr. Slattery stated that this rule was adopted to ensure that an informal resolution of the problem had been attempted. On cross-examination, the plaintiff admitted that on only one occasion had a BP–9 form been returned to him for failure to attach a cop-out. The plaintiff did not indicate what that particular BP–9 form concerned. He stated, however, that the cop-out was in fact attached to the BP–9 form. When questioned about this, Mr.

Slattery stated that he reviewed the BP–9 form at issue and if the cop-out was attached he certainly did not see it. The Court again finds that the plaintiff failed to comply with the procedures developed to promote the goals of the grievance system, and this aspect of the plaintiff's claim will be dismissed.

At one point in his testimony at the hearing, the plaintiff stated that the prison authorities would only process one BP–9 grievance form at a time. He went on to speculate that he could at some time be foreclosed from raising a serious complaint because he had been duped into filing a grievance as to a matter of lesser importance. The situation appears to be entirely conjectural. The plaintiff has not shown that he has been prevented from filing a grievance under the circumstance he discussed at the hearing. He acknowledged that most of his complaints arise from difficulties in fully practicing his religious beliefs while at Petersburg. According to Mr. Nelson, a resolution of this problem is underway, and the plaintiff is due to be transferred to a federal prison in Miami, Florida, which houses a larger population of Jewish inmates. This belies the plaintiff's contention that, in his case, the grievance procedure has been ineffectual. If the plaintiff does not provide specific allegations within 30 days, his claim that he has been denied access to the grievance system will be dismissed.

The final complaint raised by the plaintiff at the hearing concerned the seizure of a total of 25 cartons of his property at the time he was transferred to Petersburg. Of the 25 cartons, 2 contain primarily personal property items while 23 contain legal materials. At the hearing and without objection from the plaintiff, the Assistant United States Attorney estimated the total volume of the cartons as 100 cubic feet. Photographs were taken of the cartons, and these are included in the record as Defendants' Exhibit 9. The plaintiff requests that storage space and access be provided so that he can retain the full 23 cartons of legal materials. He insists that all of the records

found in the cartons pertain to ongoing litigation, and he testified that he faces or has already missed a number of court-imposed deadlines in his cases.

The matter of the 2 cartons of personal property resolved itself at the hearing. The property is now available to the plaintiff, and he can take whatever of the property he wants. The personal property was confiscated in the first place because the plaintiff at first refused to take his personal property from the cartons unless he was also allowed to keep all of the cartons of legal material. Again, relief is available to the plaintiff without intervention of the Court. He should sort through his personal property and decide which property items he desires to keep with him in the allotted space.

The 23 cartons of legal materials pose a more difficult problem. The plaintiff stated at the hearing, and the Court readily accepts his statement, that the materials contained in the cartons pertain to ongoing litigation. According to the plaintiff, he presently has 62 *pro se* cases pending in numerous courts. He claims that he is a defendant in more than half of these cases. The plaintiff's father, an attorney in New Jersey, apparently represents him in a number of other actions. The law practice the plaintiff is endeavoring to maintain out of his prison cell would swamp a small firm.

■ As is true with his other problems, the plaintiff has gone beyond all reason in accumulating legal materials and in large part, he is the architect of his own difficulties. The Court informed him at the hearing that he would not be able to keep the entire 23 cartons of legal materials. The plaintiff was advised to begin to go through the materials, to prioritize his cases, and to prepare to send a portion of his materials outside of the institution. There is no way the prison can be expected to store the amount of material which the plaintiff presently possesses. The plaintiff should now submit to the Court, within 10 days of the date of this order, the result of his sorting process. He should provide a list of the cases which he presently has pending.

He should indicate which cases are habeas actions. He should mark any other cases which raise constitutional questions regarding his confinement in prison. He should list separately those cases which do not concern his conviction or confinement. For those cases where the cause of action has no relation to the prison context, the plaintiff should state whether he is a plaintiff or a defendant in each individual case, and he should provide a brief summary of the issues involved in each case. He should indicate which case files he prefers to send out of the institution. That a major portion of the 23 cartons must either be sent out of the institution to a place designated by the plaintiff or suffer destruction is obvious.

The Court at this time cannot advise the plaintiff of the precise amount of space in which he will be allowed to store his materials. If the plaintiff must compromise, then so must the prison authorities. Provisions have to be made for storage of a large amount of legal material, even after the volume of materials is substantially reduced by the plaintiff. At the hearing, Mr. Slattery testified that the plaintiff had been offered storage space in a file cabinet in the prison law library. The prison authorities will be held to that offer, and the plaintiff will be provided the extra storage space, estimated at four cubic feet, in the file cabinet. The Court has also been informed that shelf space is available in the prison law library for storage of the plaintiff's law books and periodicals. There can be no assurance that those materials will not be damaged or lost, however. The plaintiff should decide whether he wishes to store his books and periodicals in the library.

There remains the matter of storage space within the plaintiff's cell. The defendants have referred to a policy at the Petersburg Federal Correctional Institution which limits storage space for legal materials to three cubic feet within an inmate's living quarters. The Petersburg authorities chose the minimum amount of space allowable under a Bureau of Prisons Policy Statement. No testimony was offered at the hearing concerning the space that is allot-

ted to storage of non-legal books, magazines, and papers. Also, there was no indication of the size of the lockers in which prisoners are required to store their personal belongings. The defendants will be granted 10 days within which to file a supplemental pleading which supplies this information. The defendants should also present any grounds upon which they would object to the following ruling: an inmate should be allowed to store legal materials in any storage areas designated for his personal use, including his locker, if he chooses to limit his personal possessions rather than his legal materials. As the Court has previously noted in its ruling from the bench in *Riggs v. Nelson*, Civil Action No. 78–0076–R, it is difficult to differentiate between storage of legal materials and storage of personal property. The Court will expect a response on the legal materials issue from the plaintiff and the defendants within 10 days from the date of this order, and the matter will be reviewed further at that time.

One issue which remains in limbo at this point in the litigation is the plaintiff's claim that he has not been allowed to fully exercise his religious beliefs. A great deal of confusion exists over this claim. The plaintiff has recently filed a motion for reconsideration in Civil Action No. 80–0273–R because he was under the impression that that complaint concerned restrictions on the exercise of his religious beliefs. It did not. The only allegations raised by the plaintiff in regard to restrictions on his right to practice his religion that the Court has located are found in Civil Action No. 80–0115–R, which is a habeas action, and Civil Action No. 80–0266–R, which has been consolidated with Civil Action No. 80–0155–R. The Court finds it appropriate to grant the plaintiff 30 days within which to amend Civil Action No. 80–0155–R to raise any claim he might have in this respect. It must be recalled, though, that Mr. Nelson stated at the hearing that the Petersburg facility was not able to afford the plaintiff all of the opportunities he sought to practice his religion because he was the only Jewish inmate at the prison. Mr. Nelson testified that arrangements were being made to transfer the plaintiff to Miami where he will have greater opportunities for religious activity. This testimony will be given great weight in reviewing the plaintiff's amended complaint.