**Rufus Azania AVERHART, Plaintiff,**

v.

**Cloid SHULER, Jack Duckworth, Edward Jones, William Hartly, Jane Chmielowiec, Defendants.**

No. S 84–266.

United States District Court,
N.D. Indiana,
South Bend Division.

Feb. 12, 1987.

Rufus Azania Averhart, pro se.

Kermit R. Hilles, Deputy Atty. Gen., Indianapolis, Ind., for defendant.

### MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

Rufus Azania Averhart (hereafter plaintiff) has filed a complaint pursuant to 42 U.S.C. § 1983, against the defendants. The gist of plaintiff's complaint contains three basic allegations concerning the mail handling procedures of the Indiana State Prison and the regulations of the Indiana Department of Corrections. Plaintiff contends that the actions of the defendants have violated his First, Fourth, Fifth, Sixth, Eighth, Ninth, Thirteenth and Fourteenth Amendment rights. First, plaintiff claims that three pieces of legal mail addressed to him were opened outside of his presence. Second, plaintiff asserts that three of his letters to be mailed to attorneys were unnecessarily delayed for at least one day. Finally, plaintiff claims that he should not be required to pay postage for the mailing of confidential correspondence to elected officials because this type of correspondence constitutes legal mail, and thus, should be mailed at no cost to him if his prison account contains less than thirty dollars ($30.00).

Plaintiff filed this complaint in April, 1984. Since that time, both plaintiff and defendants have conducted complete and exhaustive discovery. United States Magistrate Robin D. Pierce held a pretrial conference on motions on January 27, 1986. This court now affirms the orders entered at the pretrial conference by Magistrate Pierce. This court then held a bench trial in the cause on November 11 and 12, 1986, at the Indiana State Prison in Michigan City, Indiana. The plaintiff was a *pro se* litigant and presented his case in an orderly and competent fashion. Plaintiff did not request appointment of counsel. Post-memorandum briefs were filed by the plaintiff and defendants. The court will rest its decision on the record before it and the evidence garnered at the bench trial. This memorandum is intended to comply with Rule 52 of the Federal Rules of Civil Procedure.

The relevant statutes from the Indiana Code in regard to inmate correspondence which relate to this case are as follows:

11–11–3–3  Correspondence to or from governmental officials, etc.; opening for inspection

Sec. 3  If correspondence is to or from government officials, courts, attorneys, or representatives of the public news media, it may not be opened, read, censored, copied, or otherwise interfered with in regard to its prompt delivery or transmission. However, the department may open it in the presence of the confined

person for the purpose of examining the contents for contraband or prohibited property. Upon conclusion of the inspection, the item of correspondence (other than any contraband or prohibited property) must be promptly delivered or transmitted without reading, censoring, copying, or further interfering with its deliverance or transmission. *As amended by P.L. 99–1986, SEC. 1*

11–11–3–4 Correspondence to or from persons not enumerated in 11–11–3–3; inspection; removal of items; censorship; delays; records

Sec. 4. (a) If correspondence is from a person not enumerated in section 3 of this chapter, it may be opened to inspect for and remove contraband or prohibited property and to permit removal of funds for crediting to the confined person's account. That piece of correspondence may not be read, censored, copied, or otherwise interfered with in regard to its prompt delivery unless the department has reasonable grounds to believe that:

(1) it poses an immediate danger to the safety of an individual or a serious threat to the security of the facility or program; or

(2) it is prohibited under section 2(b) of this chapter.

The confined person must be informed of the removal of funds, including the amount.

(b) The department may adopt procedures to inspect correspondence from an offender to a person not enumerated under section 3 of this chapter to determine whether the correspondence contains contraband or prohibited property. The procedures shall not authorize correspondence from an offender to be censored or read. If the department has reasonable grounds to believe that the correspondence:

(1) poses an immediate danger to the safety of an individual or a serious threat to the security of the facility or program; or

(2) is prohibited under section 2(b) of this chapter;

it may be opened for reading and appropriate action.

(c) For purposes of this section, disagreement with the sender's or receiver's apparent moral, political, ethical, ethnic or religious values or attitudes, veracity, or choice of words may not be used as a reason for censoring copying, delaying, or disallowing the delivery of a personal communication.

(d) If the department delays, censors, copies, or withholds correspondence, it shall promptly notify the person. The notice must be in writing and specify the reason for the action, the name of the sender, the date of any postmark, the date the correspondence was received or deposited at the facility or program, the proposed disposition to be made of the correspondence, the name of the person who made the decision, and the fact that the department's action may be challenged through the grievance procedure.

(e) The department shall maintain a record of each decision to withhold, copy, delay, or otherwise interfere with the prompt transmission of correspondence. This record must indicate the information set forth in the notice prescribed in subsection (d). *As amended by P.L. 150–1983, SEC. 2; P.L. 99–1986, SEC. 2.*

Indiana Code, 1982.

## I.

Plaintiff's most serious allegation is that the defendants opened three pieces of his legal mail outside of his presence. Legal mail is defined as mail received from or sent to a court, a judge, or an attorney. Such mail is delivered for a prisoner at no cost if such prisoner has less than thirty dollars ($30.00) in his prison account. Pursuant to I.C. § 11–11–3–3, legal mail may not be opened and examined for contraband or prohibited property unless it is opened in the presence of the inmate.

■ The rule that the inmate be present when his legal mail is opened is a constitutional requirement based on the Supreme Court's decision in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935

(1974). There the Court decided that it was permissible for prison authorities to require that a lawyer who wishes to correspond with a prisoner first identify himself to the prison officials to assure that the letters marked privileged are actually from members of the bar. *Id.* at 576–577, 94 S.Ct. at 2984–2985. This would put the prison officials on notice that such mail is legal mail and should not be opened to be inspected for contraband unless it is done in the presence of the prisoner. The Court further stated:

> As to the ability to open the mail in the presence of inmates, this could in no way constitute censorship, since the mail would not be read. Neither could it chill such communications, since the inmate's presence insures that prison official will not read the mail. The possibility that contraband will be enclosed in letters, even those from apparent attorneys, surely warrants prison officials' opening the letters.

*Id.* at 577, 94 S.Ct. at 2985. The Court of Appeals for the Seventh Circuit has most recently upheld the rule set forth in *Wolff v. McDonnell* in *Gaines v. Lane,* 790 F.2d 1299 (7th Cir.1986). There, the Seventh Circuit held that privileged mail must be opened in the presence of the inmate. *Id.* at 1305–1306. Privileged mail includes legal mail under the regulations set forth by the Illinois Department of Corrections.

■ Indiana Code § 11–11–3–3 states that legal mail may be opened at the discretion of the prison officials in the presence of the inmate when they have reasonable grounds to believe that contraband or prohibited property may be contained therein. The constitutionality of this statute was most recently considered in *McChristion v. Duckworth,* 610 F.Supp. 791 (N.D.Ind. 1985). There, plaintiff claimed that his constitutional rights were violated when the prison officials opened his legal mail in his presence despite the holding of *Wolff v. McDonnell, supra.* Judge William C. Lee stated:

> I.C. 11–11–3–3 is in exact accord with the procedure set forth by the United States Supreme Court regarding legal mail as being in compliance with minimum due process rights. I.C. 11–11–3–3 does not go beyond the insuring of minimum due process rights nor does it need to go beyond the dictates of *Wolff.* The limitation of "reasonable grounds" is not a limitation of any substance or weight upon prison officials' discretion in the State of Indiana to determine to open legal mail in the presence of the inmate. I.C. 11–11–3–3 is a state created procedural right and is not itself a liberty interest within the meaning of the fourteenth amendment.

*McChristion* at 794. The court further held that even assuming I.C § 11–11–3–3 created a substantive liberty interest protected by the Fourteenth Amendment, the defendants did not violate the strictures of I.C. § 11–11–3–3 since the mail was opened in the inmate's presence and the mail was not read. *Id.* at 795. *See also Williams v. Duckworth,* 617 F.Supp. 597, 600 n. 2 (N.D. Ind.1985). The situation of the plaintiff here deviates from that of the plaintiff in *McChristion.* The legal mail of plaintiff was opened *out* of the presence of the plaintiff here, and the defendants have admitted the same. But the plaintiff has not shown that the defendants' conduct extended beyond negligence into deliberate indifference, thus causing a constitutional infringement.

The Supreme Court has recently espoused a measure of conduct in two cases which must be shown before a constitutional infringement protected by 42 U.S.C. § 1983 is implicated. Second, and more importantly, the Court emphasized that only those rights directly derived from the Constitution, its Bill of Rights, and Amendments will be protected by 42 U.S.C. § 1983. In *Daniels v. Williams,* —— U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the Court reviewed the § 1983 complaint of an inmate who argued that his liberty interest of freedom from bodily injury "without due process of law" within the meaning of the Fourteenth Amendment had been abridged when the jail staff left a pillow case on the jail floor which the plaintiff slipped on resulting in physical injury. At 106 S.Ct. 664, the Court cited its prior

holding in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), wherein it held that all which needs to be shown in a § 1983 suit is that a constitutional deprivation occurred and that there is no requirement of a showing of the defendant's "state of mind". The Court concluded that the unintentional loss of a liberty interest, a right, property, or the sustaining of a personal injury which is a result of negligent action does not rise to a level which is protected by the Fourteenth Amendment:

> To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries old principle of due process of law.

106 S.Ct. at 665. The Court, at 106 S.Ct. 666, made it clear that only those rights which are traditionally derived from an uncluttered and pristine reading of the Constitution, its Bill of Rights and Amendments will trigger Fourteenth Amendment protection:

> Our Constitution deals with the large concerns of the governors and of the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society. We have previously rejected reasoning that "would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States," *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976), quoted in *Parratt v. Taylor*, 451 U.S., at 544, 101 S.Ct., at 1917.

The Court in *Daniels* concluded that the actions of the defendants in leaving a pillow case on the floor did not rise to the level of conduct which implicates the Due Process Clause of the Fourteenth Amendment:

> Where a government official's act causing injury to life, liberty or property is merely negligent "no procedure for compensation is constitutionally required." *Parratt*, 451 U.S. at 548 [101 S.Ct. at 1919] (POWELL, J., concurring in result) (footnote omitted).

106 S.Ct. at 666. The Court emphasized its narrow interpretation of those subject matters which can legitimately claim ancestry in the Constitution:

> That injuries inflicted by governmental negligence are not addressed by the United States Constitution is not to say that they may not raise significant legal concerns and lead to the creation of protectable legal interests. The enactment of tort claim statutes, for example, reflect the view that injuries caused by such negligence shall generally be redressed. It is no reflection on either the breadth of the United States Constitution or the importance of traditional tort law to say that they do not address the same concerns. (footnotes omitted).

106 S.Ct. at 666.

In *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), another prison case, the inmate plaintiff filed a § 1983 action against prison administrators alleging that they had abridged his right not to be subjected to cruel and unusual punishment as proscribed by the Eighth Amendment, and his right not to be deprived of personal security without due process of law as protected by the Fourteenth Amendment. Factually, the plaintiff asserted that he had sent a written message to a prison administrator informing the administrator that he had been physically threatened by a fellow inmate and that he feared assault from the inmate whose name was specified. Prison administrators basically ignored the message. The plaintiff was soon thereafter assaulted by the specified inmate by the use of a fork which resulted in wounds to plaintiff's face, neck, head, and body, and caused a broken nose. While citing its decision in *Daniels, supra,* the Court again held that the defendant's inattention to the written message did not rise beyond a level of conduct which could be described as negligent. The Court held that even though serious injury resulted from defendants' conduct, the plaintiff was not protected by the Due Process Clause of the Fourteenth Amendment. *Davidson,* 106 S.Ct. at 670.

The plaintiff in *Davidson,* attempted to distinguish and isolate the substantive claim (not to be deprived of personal security) from the procedural claim by arguing that his claim was "purely procedural," thus circumventing the requirement that plaintiff must show conduct beyond negligence. The Court reaffirmed that such an argument must fail because the procedural aspect of the Fourteenth Amendment is only triggered if any underlying substantive right is at issue:

> In an effort to limit the potentially broad sweep of his claim, petitioner emphasizes that he "does not ask this Court to read the Constitution as an absolute guarantor of his liberty from assault by a fellow prisoner, even if that assault is caused by the negligence of his jailers." Brief for Petitioner 17. Describing his claim as one of "procedural due process, pure and simple," Id., at 14, all he asks is that New Jersey provide him a remedy. But the Fourteenth Amendment does not require a remedy when there has been no "deprivation" of a protected interest.

*Davidson,* 106 S.Ct. at 670. The Court in *Davidson* concluded that the complaint failed because "the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials." *Davidson,* 106 S.Ct. at 671.

"Negligence is not itself actionable." *Kirchoff v. Flynn,* 786 F.2d 320 (7th Cir. 1986). *See also Bodine v. Elkhart County Election Board,* 788 F.2d 1270, 1272 (7th Cir.1986) and *Rascon v. Hardiman, et al,* 803 F.2d 269 (7th Cir.1986). Plaintiff has not shown that the opening of his legal mail by defendants was more than negligent. Furthermore, plaintiff has not shown that any of the defendants read, copied or censored any of his legal mail. Every prison official who testified at the trial was asked whether he or she had read, copied or censored plaintiff's legal correspondence. All answered in the negative. While this court does not condone the mere negligent opening of a prisoner's legal mail, the court is compelled to conclude that the defendants' actions were nothing more than mere negligence resulting in no harm to the plaintiff. The defendants searched the mail for non-textual contraband. Thus, absent the defendants acting with deliberate indifference toward the treatment of plaintiff's mail, plaintiff's claim does not rise to a constitutional magnitude. *Davidson, supra,* and *Daniels, supra. See also* Note, *"Daniels, Davidson* and the Unlearned Lesson of *Parratt v. Taylor:* Eliminating Simple Negligence as a Basis for Procedural Due Process Claim (If at First You Don't Succeed, Overrule It)." 62 Notre Dame L.Rev. 98 (1986).

In a case very similar to the present one, this court found that "legal mail is from time to time opened by accident due to the volume of the mail or the failure of the sender to clearly mark it as legal mail." *Hendrix v. Faulkner,* 525 F.Supp. 435, 455 (N.D.Ind.1981). This court further found that where there was no evidence to indicate a pattern or practice of opening or interfering with the delivery of legal mail, the plaintiff's claim did not rise to a constitutional level. *Id.* That part of this court's decision survived appellate scrutiny. *See Wellman v. Faulkner,* 715 F.2d 269 (7th Cir.1983), *cert. den.,* 468 U.S. 1217, 104 S.Ct. 3587, 82 L.Ed.2d 885 (1984). Based on the testimony in the present case, the Indiana State Prison still receives large amounts of mail daily. The plaintiff failed to establish that there was evidence indicating a pattern or practice of opening or interfering with the delivery of legal mail. The situation here is not dissimilar to the situation in *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). There, the Supreme Court held that proof of a single incident of unconstitutional activity by a city police officer is not sufficient to impose liability under *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. 105 S.Ct. at 2436.

The plaintiff has only shown a negligent opening of his legal mail. The negligent

opening of legal mail does not rise to a constitutional level. *See Davidson, supra,* and *Daniels, supra.* Thus, plaintiff has failed to show that defendants have violated his constitutional rights in regard to the negligent opening of his legal mail.

■ Plaintiff also claims that two letters he received from two federally elected officials were opened outside of his presence. Plaintiff's Exhibits 24 and 25. This type of mail is considered confidential mail pursuant to I.C. § 11–11–3–3 and is treated like legal mail in regard to opening it. Assuming that the letters to plaintiff from United States Congresswoman Katie Hall and United States Senator Carl Levin were opened outside the presence of plaintiff, plaintiff has not shown that the defendants' actions were more than negligent. *See Davidson, supra,* and *Daniels, supra.* Although the content of letters should have nothing to do with the opening of the letter, it is interesting to note that the letters from these representatives had nothing to do with any of plaintiff's legal matters. Hall's letter discussed the Martin Luther King, Jr., national holiday, and the Levin letter discussed crime control bills which were pending before the House Judiciary Committee.

## II.

■ Plaintiff's second claim is that three of his letters which were to be mailed to his attorney were unnecessarily delayed for at least one day.[1] The first two letters which were delayed were letters written to plaintiff's attorney on direct appeal, Stephen Bower. The first of these letters was delayed for one day because it needed to be inspected in front of plaintiff for contraband. Plaintiff admits in his deposition of March 6, 1986, that the delay did not cause him to miss any deadlines or cause him any harm. P. 29. The second letter to be

delivered to Bower was delayed because it needed a remittance slip. Again, this brief delay did not cause the plaintiff any harm. The third incident described by plaintiff involved a letter mailed to attorney Michael Freeze. This letter was returned to plaintiff with a notation that it needed postage. Plaintiff returned the letter to the mailroom in an institution envelope and defendant Duckworth had it mailed. Again, plaintiff admitted in the March 6, 1986, deposition that this brief delay did not cause him any harm. Plaintiff also testified at the bench trial that the delay in the mailing of these letters did not harm him in any way.

The actions of the prison officials in regard to plaintiffs outgoing legal correspondence was not unconstitutional. In *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), the Supreme Court of the United States set forth procedural safeguards for the rejection of a letter written by or addressed to a prisoner. There the Court upheld a district court's requirements that an inmate be notified of the rejections of a letter written by or addressed to him, that the author of that letter have a reasonable opportunity to protest that decision, and that the complaints be referred to a prison official other than the person who originally disapproved the correspondence. *Id.* at 418–419, 94 S.Ct. at 1814. In each instance where plaintiff's letters to his attorneys were delayed, plaintiff remedied the situation in a manner similar to the requirements set forth in *Procunier, supra.* However, the delay in the mailing of plaintiff's letters was not due to the prison official's censoring, reading or copying of plaintiff's letters. The delay was due to postage requirements and a contraband search. Again, the delay caused by the prison officials did not harm the plaintiff in any way. Plaintiff was not

---

1. Plaintiff also contends that his constitutional rights were violated when defendant Hartly made a preliminary decision to withhold a letter addressed to plaintiff from *"Black News Magazine"* based on security reasons. In accordance with prison policy, the prison officials sent notice to plaintiff, and plaintiff initiated an appeal through the grievance procedure. Superintendent Duckworth, also a defendant here, found

that the letter did not pose a threat to the prison security interest and allowed plaintiff to receive the letter. Defendants in this instance have complied with the procedural due process prerequisites set forth by the Supreme Court of the United States. *See Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974).

deprived of the substantive right to correspond as secured by the First and Fourteenth Amendments. .*See Owen v. Lash,* 682 F.2d 648 (7th Cir.1982).

### III.

■ Plaintiff also claims that he should not be required to pay postage for the mailing of confidential correspondence to elected officials. It is plaintiff's assumption that this type of correspondence constitutes legal mail, and thus, he should not be required to pay postage if his prison account contains less than thirty dollars ($30.00). Plaintiff arrives at this conclusion because both legal mail and mail addressed to elected officials is defined as confidential correspondence. However, both are considered confidential correspondence for purposes of the prison officials' limited inspection rights of such mail. The fact that correspondence addressed to elected officials and legal mail are both considered confidential correspondence does not mean that both should be mailed at no cost to the inmate. Only legal mail may be mailed at no cost to the inmate when the inmate's account contains less than thirty dollars ($30.00). All legal mail is confidential correspondence, but not all confidential correspondence is legal mail.

The Court of Appeals for the Seventh Circuit has held that prisoners do not have a right to unlimited free postage. *Gaines v. Lane,* 790 F.2d 1299, 1308 (7th Cir.1986); *see also Bach v. Coughlin,* 508 F.2d 303, 307 (7th Cir.1974). Here plaintiff has been allowed to mail everything he desires at no cost to courts, attorneys, and judges. This gives the plaintiff adequate access to the courts as required by *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). The Indiana Department of Corrections gives indigent inmates two free envelopes a week which may be used to correspond with government officials if the inmate so desires.

In *Bach v. Coughlin,* 508 F.2d at 307–308, the court found that the regulations used by the Illinois Department of Corrections were a reasonable attempt to balance the right of prisoners to use the mails with prison budgetary consideration. There the prison regulations provided free and unlimited correspondence with federal and state courts, the Department of Corrections and the Illinois Attorney General. The prison regulations also provided each prisoner with the right to send three one-ounce letters a week to any proper correspondent. Plaintiff here has failed to show that the regulations of the Indiana Department of Corrections prohibiting free correspondence to elected officials is unconstitutional.

In a case more analogous to the present one, an inmate argued that legal mail should encompass mail to members of Congress and any other person whom he wished to address questions relating to a case. *Mahler v. Slattery,* 489 F.Supp. 798 (E.D.Va.1980). The court dismissed the inmate's claim stating that the definition of legal mail is correspondence to or from attorneys or court officials and not correspondence to members of Congress or persons with information that might prove helpful in his litigation. *Id.* at 800. Plaintiff's case here is not dissimilar.

Plaintiff's claim that he should be granted free postage for letters to members of Congress and other elected officials is one in which relief may not be granted here. The policy of the Indiana Department of Corrections in regard to prisoner correspondence passes constitutional muster. There is no merit to the constitutional challenge here lodged.

Accordingly, judgment is entered for the DEFENDANTS and against the plaintiff. Costs assessed against the plaintiff.

SO ORDERED.