**John R. STONE–EL, Plaintiff,**

v.

**J.W. FAIRMAN, Samatha Forsee, Peggy Kobel, Nancy Wright, Michael V. Neal, and Gene Williams, Defendants.**

No. 88 C 7784.

United States District Court, N.D. Illinois, E.D.

Dec. 17, 1991.

4. *See, e.g., Balestrieri v. Bell Asbestos Mines, Ltd.,* 544 F.Supp. 528 (E.D.Pa.1982).

John R. Stone–El, pro se.

Paul Francis Carlson, Illinois Atty. General's Office, Chicago, Ill., for defendants.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff John R. Stone–El, a ward of the Illinois Department of Corrections ("IDOC" or the "Department"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against six correctional officials, seeking both injunctive relief and $7,500 in compensatory and punitive damages from each defendant individually and in their official capacities. Presently before the court is Stone–El's amended motion for summary judgment.[1] For the reasons as set forth below, we deny the motion and *sua sponte* dismiss his amended complaint.[2]

### I. Summary Judgment Standard

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). This standard places the initial burden on the moving party to iden-

tify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Griffin v. Thomas,* 929 F.2d 1210, 1212 (7th Cir.1991).

### II. Background

As an inmate committed to the custody of the IDOC, Stone–El is subject to Department regulations regarding the handling of incoming and outgoing mail. These regulations distinguish between privileged and non-privileged mail, providing that outgoing mail that is non-privileged shall be unsealed when delivered to the mail room. Sealed mail that is non-privileged is opened and returned to the sender, provided the sender's identity can be determined. Rule 525.110(d) defines privileged mail as mail to and from the following: (1) the Director; (2) Deputy Directors of the Department; (3) members of the Office of Advocacy

---

1. In addition, on April 11, 1991, plaintiff filed a motion for default judgment against all defendants, claiming that "the proceedings have become stagnant, and that defendants refuse to answer the complaint." Defendants have since answered Stone–El's amended complaint. Moreover, defendants have demonstrated an unmistakable intention to defend against the allegations of Stone–El's amended complaint. Defendants have filed two motions to dismiss, have responded to each of plaintiff's motions, and have complied with each of the court's orders to date. Indeed, any delay in responding on the part of the defendants after the disposition of their motions to dismiss can only be attributed to Stone–El's refusal to cooperate with defendants' discovery requests. Accordingly, as defendants' actions fall far short of the extreme behavior justifying a default judgment, *see Pikofsky v. Jem Oil,* 607 F.Supp. 727 (E.D.Wis.1985), Stone–El's motion for default judgment is denied.

2. In their recently filed answer, defendants assert the following affirmative defenses, praying for dismissal: (1) that plaintiff has failed to allege the requisite personal involvement in the alleged deprivations; (2) that plaintiff has failed to state a claim upon which relief can be granted pursuant to 42 U.S.C. §§ 1983, 1997; and (3) that defendants acted in good faith and are entitled to qualified immunity. As these issues have been briefed in response to Stone–El's amended motion for summary judgment, we consider them here *sua sponte. See Baker v. Continental Shuttle Inc.,* No. 90–6809, 1990 WL 205280 (N.D.Ill. Dec. 7, 1990) (considering affirmative defenses asserted in the answer *sua sponte* ); *see also Brandon v. Village of Maywood,* No. 91–6898, 1991 WL 237829 (N.D.Ill. Nov. 4, 1991) (*sua sponte* dismissing complaint filed under § 1983).

Services; (4) members of the Administrative Review Board; (5) members of the Prisoner Review Board; (6) the Governor; (7) federal, Illinois or local Illinois legislators; (8) Chief Executive Officers of federal, state or local law enforcement agencies; and (9) officials of the U.S. Department of Justice. In addition, Rule 525.110(d)(10) explicitly includes "legal mail" within the scope of privileged mail. The definition of "legal mail" is found in Rule 525.110(e), providing:

> "Legal mail" means mail to and from the following:
>
> (1) Registered Attorneys;
>
> (2) The Illinois Attorney General;
>
> (3) Judges or magistrates of any court or the Illinois Court of Claims; and
>
> (4) Any organization which provides legal representation and services to committed persons.

Applying the liberal standards mandated by *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), we construe Stone–El's claims as presenting the following issue: Did the prison officials' interpretations of what constitutes privileged "legal mail," violate his constitutional rights of free speech and of access to the courts?[3] In support of his claim, Stone–El points to instances of interference with alleged privileged mail occurring at two separate institutions. First, Stone–El contends that, while incarcerated at the Joliet Correctional Center, Nancy Wright, mailroom supervisor, intentionally opened and refused to mail letters from the plaintiff (1) to R.E. Williams, Clerk of the U.S. District Court for the Northern District of Illinois; (2) to Hon. Judge Fred G. Suria of the Circuit Court of Cook County; (3) to the National Archives and Records Services; and (4) to the Illinois Secretary of State's

Office. Stone–El further asserts that James W. Fairman, Warden of the Joliet Correctional Center, and his administrative assistant, Samatha Forsee, "stood idly by" after being advised by plaintiff that his civil rights were being violated. Stone–El's second encounter with improper treatment of his mail allegedly occurred at the Danville Correctional Center. According to Stone–El, Peggy Kobel, administrative assistant to the warden, and Gene Williams, mailroom supervisor, opened, or caused to be opened, legal mail that was sent to the plaintiff by the Clerk of the United States District Court for the Northern District of Illinois. Michael V. Neal, Warden of the Danville Correctional Center, is named as a defendant by virtue of his "concurr[ance] with the actions of his administrative assistant, Peggy Kobel."

### III. Discussion

In order to sustain a claim for a violation of § 1983, a plaintiff must prove two things: (1) that the defendants were acting under the color of state law, and (2) that their conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981) (overruled in part, not relevant here, by *Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986)). Regarding the first element, there is no dispute that each defendant acted under the color of state law by means of the authority given to them by the State of Illinois as employees of the IDOC. Thus, we turn to the question of whether Stone–El's allegations of harm give rise to a claim of deprivation secured by the Constitution or laws of the United States.

---

**3.** Additionally, Stone–El's amended complaint attempts to state a claim under 42 U.S.C. § 1997d. Section 1997d provides that "[n]o person reporting conditions which may constitute a violation under [the Civil Rights of Institutionalized Persons Act, 42 U.S.C. §§ 1997 *et seq.*] shall be subjected to retaliation in any manner for so reporting." The Civil Rights of Institutional Persons Act, however, was enacted to "provide[ ] the Attorney General of the United States with standing to protect institutionalized persons against a pattern of violations of their rights. It does not, however, form the basis for

an individual cause of action." *Cooper v. Sumner*, 672 F.Supp. 1361, 1367 (D.Nev.1987). Moreover, to the extent that Stone–El had a private cause of action under § 1997d, as mentioned in our order dated August 20, 1991, he has failed to set forth any facts whatsoever tending to "establish a reasonable probability that his claim of retaliation has merit." *Stone–El v. Fairman*, No. 88–7784, slip op. at 2, 1990 WL 125390 (N.D.Ill. Aug. 20, 1990). Accordingly, Stone–El's claim under 42 U.S.C. § 1997d is dismissed.

## A. Establishing a Constitutional Deprivation

It is well settled that inmates are not stripped of all First Amendment communication rights at the prison gate. *See Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987); *Procunier v. Martinez*, 416 U.S. 396, 408, 94 S.Ct. 1800, 1809, 40 L.Ed.2d 224 (1974) (overruled in part, not relevant here, by *Thornburgh v. Abbott*, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989)); *Martin v. Brewer*, 830 F.2d 76, 77 (7th Cir.1987). Likewise, the Fourteenth Amendment affords prisoners a due process right to adequate, effective, and meaningful access to courts to challenge violations of their constitutional rights. *Bounds v. Smith*, 430 U.S. 817, 824, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 577–80, 94 S.Ct. 2963, 2985–86, 41 L.Ed.2d 935 (1974); *Williams v. Lane*, 851 F.2d 867, 878 (7th Cir.1988), *cert. denied*, 488 U.S. 1047, 109 S.Ct. 879, 102 L.Ed.2d 1001 (1989). As a corollary of both the prisoner's right to access and his limited free speech rights, a prison inmate has a constitutional right to be free from certain interferences with his "privileged" or "legal mail." *See Procunier*, 416 U.S. at 418–19, 94 S.Ct. at 1814; *Wolff*, 418 U.S. at 577, 94 S.Ct. at 2985; *Davidson v. Scully*, 694 F.2d 50, 53 (2d Cir.1982); *Crowder v. Lash*, 687 F.2d 996, 1004 (7th Cir.1982).

The balance between the government's legitimate interest in prison security and the prisoner's constitutional rights has led courts to draw a distinction between incoming and outgoing privileged mail. We begin with Stone–El's claims concerning the incoming letters. The uncontroverted evidence establishes that prison officials at the Danville Correctional Center opened mail addressed to Stone–El from the Clerk of the United States District Court for the Northern District of Illinois outside of Stone–El's presence. Indeed, Stone–El has attached a letter dated July 30, 1990, addressed to him from defendant Kobel that reads in pertinent part: "Department Rule, 525.110(e) which defines 'legal mail' does not include mail to or received from Court Clerks. Accordingly, such mail is subject to being opened for inspection as is all non-privileged inmate mail." Likewise, the same language is contained in a letter also dated July 30, 1990, addressed to "all inmates" from Warden Neal.

The Supreme Court, in *Wolff*, 418 U.S. at 577, 94 S.Ct. at 2985, held that mail sent by an attorney to an inmate was privileged and could not be read by prison officials. Recognizing the possibility that such legal mail may contain contraband, however, the Court held that a regulation allowing prison officials to open *incoming* letters in the inmate's presence passes constitutional muster. *Id.* The Court reasoned as follows:

> As to the ability to open the mail in the presence of inmates, this could in no way constitute censorship, since the mail would not be read. Neither could it chill such communications, since the inmate's presence insures that prison officials will not read the mail. The possibility that contraband will be enclosed in the letters, even those from apparent attorneys, surely warrants prison officials' opening the letters.

*Id.* Stone–El would have this court extend the rationale of *Wolff* and hold that incoming mail from a court clerk may only be opened in the presence of the inmate. We decline to adopt this position.

As noted by the Seventh Circuit in *Martin*, 830 F.2d at 78–79, there are fundamental distinctions between letters from an attorney and letters from a court:

> with minute and irrelevant exceptions all correspondence from a court to a litigant is a public document, which prison personnel could if they want inspect in the court's files. It is therefore not apparent to us why it should be regarded as privileged and how [plaintiff] could be hurt if the defendant read those documents before or after [plaintiff] does.

Indeed, the Court's holding in *Wolff* was apparently driven by the concern over the traditional privacy of the lawyer-client relationship. *See Wolff*, 418 U.S. at 574–77, 94 S.Ct. at 2983–85; *see also Jackson v. Mowery*, 743 F.Supp. 600, 606 (N.D.Ind.1990)

("The Supreme Court [in *Wolff*] has acknowledged that the Sixth Amendment protects the attorney-client relationship from intrusion. . . ."); *Sanchez v. Esthers,* No. 88–619, slip op. at 3, 1989 WL 84595 (N.D.Ill. July 21, 1989) ("this Court believes it likely that the rationale of *Martin* would be extended to hold that inmate rights are not violated when official court mail is opened outside the recipient's presence."). Accordingly, we hold that the opening of Stone–El's letters from the Clerk of United States District Court for the Northern District of Illinois outside of Stone–El's presence does not constitute a deprivation of a right secured under the Constitution.[4] We now turn to consider the handling of Stone–El's outgoing letters.

■ At the outset, we hold that neither Stone–El's letter to "Mr. Ronald Swerczek: Acting Chief Diplomatic Officer, The National Archives and Records Administration," nor that addressed to "Mr. James Edgar: Secretary of State" constitute privileged mail. Clearly, neither addressee is one of those enumerated under Rule 525.-110, defining the categories of mail to be treated as privileged. Moreover, we cannot conclude that Stone–El possesses a federal constitutional right to engage in such correspondence. In an analogous case, an inmate "argued for a more expansive definition [of 'legal mail'] which would encompass mail to members of Congress and also any individuals to whom he wished to address questions relating to a case." *Mahler v. Slattery,* 489 F.Supp. 798, 800 (E.D.Va.1980). The court dismissed the inmate's claim stating "legal mail is correspondence to or from attorneys or court officials . . . [and not] to members of Congress or persons with information that might prove helpful in the litigation." *Id.* (citing *Crowe v. Leeke,* 550 F.2d 184 (4th

Cir.1977)); *see also Averhart v. Shuler,* 652 F.Supp. 1504, 1511 (N.D.Ind.) (concluding that letters to members of Congress and other elected officials are not legal mail), *aff'd,* 834 F.2d 173 (7th Cir.1987), *cert. denied,* 484 U.S. 1073, 108 S.Ct. 1045, 98 L.Ed.2d 1008 (1988). Accordingly, the opening and return of these letters in accordance with the IDOC regulations governing outgoing non-privileged mail does not give rise to constitutional violation.

■ The same cannot be said for the handling of Stone–El's letters addressed to "Hon. Judge Fred G. Suria, Jr., Circuit Court of Cook County," and to R.E. Williams, Clerk of the U.S. District Court for the Northern District of Illinois.[5] As noted above, letters to and from court officials are protected as privileged. *See Averhart,* 652 F.Supp. at 1511. It is self-evident that both judges and clerks are "court officials." Indeed, the current IDOC regulations explicitly lists letters to and from "[j]udges or magistrates of any court or the Illinois Court of Claims" as protected "legal mail." And until November 1, 1987, the privileged addressees enumerated in the regulations specifically included "clerks of any court."

We can fathom no legitimate governmental interest in opening and inspecting letters from inmates to either judges or clerks. As stated in *Davidson,* 694 F.2d at 53, "[t]he only 'contraband' that is difficult to detect without opening a letter is 're-stricted correspondence' (*e.g.,* correspondence . . . involving illegal activity) that the prisoner hopes the addressee will surreptitiously forward." However, we agree with the Fifth Circuit's conclusion that:

> [there is] no justification whatsoever for opening or reading correspondence addressed to the courts. . . . The content of this outgoing mail cannot, except on

---

**4.** We note that the mere fact that the conduct in question violates IDOC regulations does not per se form the basis of § 1983 liability. *Kompare v. Stein,* 801 F.2d 883, 888 (7th Cir.1986); *Wells v. Franzen,* 777 F.2d 1258, 1264 n. 4 (7th Cir. 1985).

**5.** We note that the Suria letter was clearly marked "Privileged Mail, Do Not Open," in compliance with the requirements of IDOC Rule

525.130. With regard to the letter addressed to the clerk of the court, Stone–El has failed to specify which of the numerous letters contained in the record was opened and returned to him. However, given the less stringent standards afforded Stone–El as a *pro se* plaintiff and the fact that defendants do not specifically deny opening such a letter, this shortcoming is not fatal at this stage of the proceedings.

the most speculative theory, damage the security interests of jail administration. [Citations omitted]. As a general proposition, it must be assumed that mail addressed to governmental offices ... containing contraband or information about illegal activities will be treated by the recipients in a manner that cannot cause harm.

*Taylor v. Sterrett*, 532 F.2d 462, 473–74 (5th Cir.1976); *see also Davidson*, 694 F.2d at 53.

More to the point, to the extent that prison officials are permitted to open and inspect letters from inmates to judges or clerks, the right to "adequate, effective and meaningful" access to the courts is empty. Direct access to a judge provides inmates with the necessary opportunity to voice their grievances and petition for redress. This is particularly imperative in the case of an inmate who has yet to file an action and who corresponds with the judge presiding over the initial criminal matter. Likewise, once the inmate files suit to redress his grievance, correspondence with the clerk of the court is essential. Indeed, after Stone–El filed this action, this court explicitly directed him to submit all documents to the court clerk.

The fear associated with prison officials opening inmates' legal mail addressed to either a judge or the clerk of the court is twofold: retaliation and delay. With regard to retaliation, as noted by the Seventh Circuit, an inmate is most likely to face such behavior by prison officials for litigation regarding prison conditions in the face of a letter addressed to, not from, a court. *See Martin*, 830 F.2d at 78. Further, the delay stemming from the opening and return of sealed letters to courts "may itself be prejudicial to a prisoner's rights if, for example, it prevents the timely filing of legal documents." *Davidson*, 694 F.2d at 53. As such, the opening and return of Stone–El's letters addressed to Judge Suria and R.E. Williams, Clerk of the United States District Court for the Northern District of Illinois, gives rise to a claim of

deprivation secured by the United States Constitution.[6] This conclusion, however, does not end our inquiry. In order to recover damages in this case, Stone–El must overcome defendants' assertion of qualified immunity and must establish the personal responsibility of each defendant. We now turn to the issue of qualified immunity.

## B. Qualified Immunity

Defendants assert that even if the above action constitutes a deprivation of a right secured under the Constitution, they are entitled to qualified immunity. We agree. Government officials performing discretionary functions are generally shielded from liability for civil damages unless they violated "clearly established ... constitutional rights ... of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Davis v. Scherer*, 468 U.S. 183, 194 n. 12, 104 S.Ct. 3012, 3019 n. 12, 82 L.Ed.2d 139 (1984) (applying *Harlow* standard to state officials sued under § 1983). The Supreme Court in *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987), elaborated on the meaning of the term "clearly established right," holding that:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, [citation omitted]; but is to say that in light of pre-existing law the unlawfulness must be apparent.

Drawing upon *Harlow* and *Anderson*, the Seventh Circuit set forth the following two step approach to qualified immunity questions: First, the defendants' actions must be "defined or characterized according to the specific facts of the case." *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir.) (en

---

**6.** Moreover, even if this court were to apply the less stringent standard generally applicable to the opening of incoming legal mail, the opening of the Suria letter nonetheless constitutes a constitutional deprivation as the undisputed evidence reveals that the letter was opened outside of Stone–El's presence. *See Wolff*, 418 U.S. at 577, 94 S.Ct. at 2985.

banc), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). Second, a court must look "to the body of law existing at the time of the alleged violation to determine if constitutional, statutory, or case law shows that the now specifically defined actions violated the clearly established law." *Id.; see also Landstrom v. Illinois Dep't of Children & Family Serv.,* 892 F.2d 670, 675 (7th Cir.1990). Stone–El, as plaintiff, bears the burden of establishing the constitutional right in question was clearly established. *See Rakovich,* 850 F.2d at 1209.

Applying the *Harlow* standard in the manner outlined in *Rakovich,* we define the issue as follows: Whether prison inmates had, at the time of Stone–El's deprivation, a clearly established right to mail sealed letters to either a judge or a court clerk free from inspection by prison officials. At the threshold, we note that the mere fact that defendants' conduct with regard to the Suria letter may have violated IDOC regulations does not strip the defendants of qualified immunity. *Davis,* 468 U.S. at 194, 104 S.Ct. at 3019 ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision."). The rationale for this conclusion is clear: the violation of IDOC regulations does not give rise to a cause of action under § 1983, and therefore, our present focus rests on the violation of Stone–El's constitutional rights. *See id.* at 194 n. 12, 104 S.Ct. at 3019 n. 12.

Stone–El has failed to cite any case, nor has this court found any case, from which we could conclude that a reasonable prison official would have known that defendants' conduct in this case was unlawful. True, at the time of the instant deprivation, it was clearly established that letters addressed to court officials are privileged. *See Averhart,* 652 F.Supp. at 1511. Likewise, the United States Supreme Court has held that it is impermissible for prison officials to refuse to permit a prisoner to mail legal documents to a court. *Ex parte Hull,* 312 U.S. 546, 549, 61 S.Ct. 640, 641–

42, 85 L.Ed. 1034 (1941); *see also Spires v. Dowd,* 271 F.2d 659 (7th Cir.1959) (impermissible for a warden to refuse to permit a prisoner to mail legal documents to the clerk of the state court); *Harris v. Randolph,* No. 83–1950, slip op. at 5 (N.D.Ill. Feb. 1, 1985) (allegations of alterations of outgoing pleadings states a cause of action under § 1983). However, as stated above, our current focus is more narrow. *See Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. The question of whether privileged outgoing mail can be inspected for contraband, either in or out of the inmate's presence, surprisingly is a novel issue; we have found no case directly on point that is controlling in this jurisdiction. Indeed, we could find only two cases in total addressing the handling of outgoing legal mail, *Davidson* and *Taylor.* Although the holdings are not factually identical to the instant case, the reasoning of each of these cases gives way to the conclusion that the opening of outgoing privileged mail addressed to judges or court clerks is not justified by the security interests involved. *See Davidson,* 694 F.2d at 53; *Taylor,* 532 F.2d at 473–74. However, these are two isolated opinions from two foreign circuits.

The Supreme Court has never addressed the issue of which court one must look to in determining whether a right is "clearly established." The Seventh Circuit, however, has stated that the qualified immunity inquiry must reveal "a 'sufficient consensus,' based on all *relevant* case law, 'indicating that the official's conduct was unlawful.'" *Landstrom,* 892 F.2d at 670 (quoting *Cleveland–Perdue v. Brutsche,* 881 F.2d 427, 431 (7th Cir.1989) (emphasis supplied), *cert. denied,* —— U.S. ——, 111 S.Ct. 368, 112 L.Ed.2d 331 (1990)). Apparently, relevant case law is that which creates a "fair assurance that the recognition of the right by a controlling authority [is] merely a question of time." *Cleveland–Perdue,* 881 F.2d at 431. With this standard in mind, we cannot conclude that the existence of the Second Circuit's decision in *Davidson* and the Fifth Circuit's decision in *Taylor* is relevant to the determination of whether the right in question was clearly established. Indeed, if the essence of qual-

ified immunity is reasonable notice, *see Azeez v. Fairman*, 795 F.2d 1296, 1301 (7th Cir.1986), requiring local government officials to survey the case law of every foreign jurisdiction and assess its likely impact on the governing jurisdiction is not only unrealistic, but unreasonable as well. *See Alliance to End Repression v. City of Chicago*, 820 F.2d 873, 875 (7th Cir.1987) ("public officials are entitled to immunity until it has been *authoritatively* decided that certain conduct is forbidden") (emphasis supplied); *Benson v. Allphin*, 786 F.2d 268, 275 (7th Cir.) (officials are not charged with predicting the course of constitutional law) (citing *Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967)), *cert. denied*, 479 U.S. 848, 107 S.Ct. 172, 93 L.Ed.2d 109 (1986). In the absence of an authoritative decision holding that an inmate's legal mail addressed to a judge or court clerk may not be opened under any circumstance, we conclude that the defendants are entitled to qualified immunity and, accordingly, dismiss Stone–El's amended complaint in its entirety.[7]

## IV. Conclusion

For the reasons as set forth above, we conclude that the opening and return of Stone–El's letters addressed to Judge Suria and R.E. Williams, Clerk of the United States District Court for the Northern District of Illinois, gives rise to a claim of deprivation secured by the United States Constitution. However, as the right in question was not clearly established in reference to the facts of this case, defendants are entitled to qualified immunity. As such, we dismiss Stone–El's amended complaint in its entirety. It is so ordered.

**7.** This court's holding with respect to the issue of qualified immunity obviates the need to address the question of whether Stone–El has es- tablished the requisite personal liability of each defendant.