**Christopher John MARTIN and Brett C. Kimberlin, Plaintiffs-Appellants,**

v.

**R.D. BREWER, Defendant-Appellee.**

**Nos. 86–2232, 86–2892.**

United States Court of Appeals, Seventh Circuit.

Submitted July 1, 1987.

Decided Sept. 8, 1987.

Christopher John Martin, pro se.

Brett C. Kimberlin, pro se.

James C. Ratzel, Asst. U.S. Atty., Sheree L. Gowey, U.S. Atty. Office, Madison, Wis., for defendant-appellee.

Before BAUER, Chief Judge, and POSNER and FLAUM, Circuit Judges.

POSNER, Circuit Judge.

Two federal inmates complain, in separate proceedings that we have consolidated in this court, that the prison in which they are confined is violating their First Amendment right of free speech. The target of the suits is the prison's practice of treating all incoming mail as general correspondence—which the prison can open and read before delivering to the inmate, see 28 C.F.R. § 540.14(a)—unless the envelope is marked "Special Mail—Open only in the presence of the inmate." Prison personnel may only inspect, not read, special mail. 28 C.F.R. § 540.18(a). Inmate Kimberlin also challenges the prison's decision to transfer him from preferred housing within the prison. The district court dismissed both complaints without an evidentiary hearing.

1. "Special mail" includes correspondence received from an inmate's attorney and from courts, Congressmen, and other public officials. However, for a letter to be treated as special mail, the sender must put his name on the envelope and mark it with the legend quoted above. See 28 C.F.R. §§ 540.2(c), 540.18(a). Without the identification and legend, "staff may treat the mail as general correspondence." 28 C.F.R. § 540.18(b). In the case of letters from attorneys, the inmate is responsible for advising his attorney to put the attorney's name and the legend on the envelope if the attorney wants the letter to be treated as special mail. 28 C.F.R. § 540.-19(b).

Read as a whole, the regulations seem to make the identification and legend mandatory. But until the spring of last year prison officials did not insist on the legend if the identification of the sender on the envelope made clear that the letter fit the special-mail category. Since then, the prison has treated as general correspondence—and on occasion has (consistently with that classification) opened before delivering to the inmate, and read—franked letters from a United States Senator, a federal district judge, and other officials, and also letters from attorneys who indicated on the envelope that they are attorneys. None of the letters contained the required legend *in haec verba*, although a few came close.

The free-speech clause of the First Amendment has been held to have some application to communications with and among prison inmates, especially (though not only) where, as in the present case, one party to the communication is not an inmate. See *Turner v. Safley*, —— U.S. ——, 107 S.Ct. 2254, 2260, 96 L.Ed.2d 64 (1987); *Procunier v. Martinez*, 416 U.S. 396, 408, 94 S.Ct. 1800, 1809, 40 L.Ed.2d 224 (1974); see generally *Ustrak v. Fairman*, 781 F.2d

573, 577–78 (7th Cir.1986). But in recognition of the acute security problems of modern American prisons, the courts have upheld restrictions on such communications that would be intolerable if both sender and recipient were free persons. See, e.g., *Turner v. Safley, supra*, 107 S.Ct. at 2263–64; *Gaines v. Lane*, 790 F.2d 1299 (7th Cir.1986); *Ustrak v. Fairman, supra*, 781 F.2d at 580; *Smith v. Shimp*, 562 F.2d 423 (7th Cir.1977). The appellants in this case do not challenge the prison's authority to read all "general correspondence" and inspect all "special mail." Nor do they argue that "special mail" should include categories beyond those indicated by the regulation. They merely complain about an ironclad requirement that all special mail, to be treated as such, contain the specified legend.

We reject their complaint with respect to mail from attorneys. To assist the prison personnel in determining whether such mail should be treated as special mail, the regulations require as we noted earlier that the prisoner advise his attorney to place the special legend on the envelope. This requirement is easy to comply with and therefore presents no serious constitutional question; the cost of compliance being essentially zero, the restriction on free speech is trivial; so is the restriction on the inmate's access to the courts. See *Wolff v. McDonnell*, 418 U.S. 539, 575–77, 94 S.Ct. 2963, 2984–85, 41 L.Ed.2d 935 (1974); *Harrod v. Halford*, 773 F.2d 234 (8th Cir.1985) (per curiam).

■ The situation may be different in the case of mail from public officials. Most of the mail is institutional. Often the institutions are unaware of the special-mail legend—and they are not likely to sit up and take notice when they receive a letter from an inmate advising them that they must affix the legend if they don't want their mail read by prison officials. Nor do inmates even know all the institutions that might send them special mail from time to time without bothering to affix the special-mail legend because the institution is unaware of the requirement.

Maybe the danger that even a franked letter purportedly from a United States Senator might contain material inimical to prison discipline is sufficiently great to justify insisting on strict compliance with the regulation requiring the special-mail legend; the inclusion in the special-mail category of foreign consulates and embassies lends at least some credibility to this speculation. So we are not prepared on this record—which is to say on no record—to invalidate the requirement, especially when we have been told recently by the Supreme Court that "prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Turner v. Safley, supra*, 107 S.Ct. at 2262. A further consideration is that much institutional mail is "junk mail"—not a personal communication to a known addressee and not containing any materials intended for his eyes only. Whether such mail is classified as general correspondence or special mail has little to do with the objects of the First Amendment.

Court mail is not junk mail, and courts should be able without difficulty to learn to affix the required legend. But there is another consideration in play regarding court mail: with minute and irrelevant exceptions all correspondence from a court to a litigant is a public document, which prison personnel could if they want inspect in the court's files. It is therefore not apparent to us why it should be regarded as privileged and how Kimberlin could be hurt if the defendant read these documents before or after Kimberlin does. (Martin is not involved in this part of the dispute; his only letter was from a Senator.) Indeed, as a party to Kimberlin's extensive litigation the defendant probably gets his own copies as soon as Kimberlin does. Although the Fifth Circuit in *Taylor v. Sterrett*, 532 F.2d 462, 475–76 (5th Cir.1976), held that prison officials have no right to read incoming court mail, the concern that animated this holding—that the prisoner might fear retaliation for litigation complaining about conditions in the prison—is far more likely to be engaged by a prisoner's letter to a judge, see *id.* at 476 n. 21,

than by a judge's order or other communication—a public document, invariably sent to the defendant, who here as always is a prison official. But we do not understand the defendant to be arguing that court mail should be treated differently from other institutional mail, and perhaps the argument has been waived.

Although it seems doubtful that the appellants will be able to prove that their rights under the First Amendment have been violated, their case, at least with respect to mail from public officials other than court personnel, is not so insubstantial that it can be rejected without an evidentiary hearing at which prison officials will be able to explain why they insist on literal compliance with the regulation and the appellants will be able to prove if they can that their freedom of speech has been curtailed more than the needs of prison discipline as articulated by the defendant warrant. We must therefore remand this aspect of the case.

2. Kimberlin complains that the prison disciplinary committee which transferred him out of "preferred housing" as a punishment for a disciplinary infraction failed to exercise its discretion to choose among alternative sanctions, some of which would have been less severe than the one imposed. He thus raises the interesting question whether *Hicks v. Oklahoma,* 447 U.S. 343, 346, 100 S.Ct. 2227, 2229, 65 L.Ed.2d 175 (1980), applies to prison disciplinary proceedings. We shall not decide the question, as our analysis of the record does not support Kimberlin's argument that the committee failed to exercise discretion. Cf. *Prater v. Maggio,* 686 F.2d 346, 350 (5th Cir.1982).

The judgment against Martin is vacated; the judgment against Kimberlin is vacated with respect to his complaint about incoming mail other than from attorneys but is otherwise affirmed. Both cases are remanded for further proceedings consistent with this opinion.

So Ordered.