Razzie WATSON, Plaintiff,

v.

Sharon CAIN, et al., Defendants.

No. 91 C 5779.

United States District Court,
N.D. Illinois, E.D.

May 4, 1993.

622

Razzie Watson, pro se.

Vanessa Victoria Alexander, Illinois Attorney General's Office, Arthur Steven Zaban, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge.

Former Stateville Correctional Center inmate Razzie Watson has brought this case pursuant to 42 U.S.C. § 1983 against several correctional officials. Watson claims defendants violated his constitutional rights by interfering with his incoming and outgoing mail during the time he spent incarcerated in Stateville. This matter is currently before the court on the parties' cross motions for summary judgment.

## Summary Judgment

Under Fed.R.Civ.P. 56(c), summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The party moving for summary judgment has the initial burden of submitting affidavits and other evidentiary material to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Once the moving party has sustained its initial burden, the opposing party may not rest upon the mere allegations or denials of the pleadings, but instead must come forward with specific evidence, by affidavits or as otherwise provided in Rule 56, showing that there is a genuine issue for trial. The court must then view the entire record in the light most favorable to the nonmoving party. *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir.1988).[1]

## Facts

During the time Watson spent as an inmate in the Stateville Correctional Center, he attempted to correspond with a vast number of individuals and organizations on the outside. Because Watson was a prisoner, he was not able to correspond as freely as he perhaps would have liked. The Illinois Department of Corrections has placed many restrictions on inmate correspondence with the outside world, and in the case of *Gaines v. Lane*, 790 F.2d 1299 (7th Cir.1986), the Seventh Circuit upheld the constitutionality of the Illinois Department of Corrections' regulations governing prisoner mail. This suit arises out of the application of those regulations to the specific items that Watson either attempted to send or receive through the mail.

## The Regulations

Illinois Department of Corrections Rules ("IDOC Rules") Section 525.110(d) defines "privileged mail" as all mail to or from the following:

(1) the Director [of the IDOC];

(2) Deputy Directors of the Department;

(3) Members of the Office of Advocacy Services;

(4) Members of the Administrative Review Board;

(5) Members of the Prisoner Review Board;

(6) the Governor of Illinois;

(7) federal, Illinois or local Illinois legislators;

(8) Chief Executive Officers of federal, state or local law enforcement agencies;

(9) officials of the U.S. Department of Justice; and

(10) legal mail.

Section 525.110(e) defines "legal mail" as all mail to or from the following:

(1) registered attorneys;

(2) the Illinois Attorney General;

(3) judges or magistrates of any court or the Illinois Court of Claims; and

(4) any organization which provides legal representation and services to committed persons.

---

1. Watson's motion for summary judgment did not have attached to it a statement of material facts as to which there is no genuine issue of material fact in compliance with Local Rule 12(M). That Rule provides as follows:

With each motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure the moving party shall serve and file, in addition to the affidavits (if any) and other materials referred to in Rule 56(e) and a supporting memorandum of law, a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law including a description of the

parties and all facts supporting venue and jurisdiction in this Court. That statement shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion.

The court hereby denies Watson's motion for summary judgment for failure to comply with Local Rule 12(M). Consequently, the court will view the record in the light most favorable to Watson in ruling upon defendants' motion for summary judgment.

IDOC Rules Section 525.130 outlines, among other things, the following restrictions regarding outgoing prisoner mail. Prisoners are permitted to mail at State expense the equivalent of three one-ounce, first class letters per week. Prisoners may send additional letters if they have sufficient funds in their trust fund accounts and attach signed money vouchers to cover the postage. All outgoing mail must be clearly marked with the prisoner's name and institutional identification number, and, with the exception of privileged mail, must be submitted for mailing unsealed. Any non-privileged mail that is submitted for mailing sealed or without a money voucher or proper identification is opened and returned to the sender.

Incoming mail is governed by Section 525.-140, which provides, among other things, the following. Incoming privileged mail must be clearly marked as "privileged," and may be opened only in the presence of the inmate to whom it is addressed. All incoming non-privileged mail is opened and inspected for contraband.

### Watson's Mail

At issue in this case is the defendants' handling of certain items of mail sent and received by Watson during his time at Stateville. Defendants contend all of Watson's mail was processed in accordance with IDOC Rules, and therefore Watson's rights were not violated. Watson, on the other hand, claims to have "a right to file whatever legal papers he chooses and to communicate freely about legal matters or other issues with the courts, news media (press), attorneys, and governmental offices...." The following is a list of the mail Watson claims was interfered with by defendants.

(1) On August 22, 1991, Watson received a letter from the Federal Information Center, a U.S. governmental agency. The letter had been opened by mail room personnel.

(2) June 21, 1991, Watson received, unopened, a letter from the Clerk of the United States District Court for the Southern District of Illinois. The letter was mailed on June 14, 1991.

(3) March 22, 1991, Watson received a letter from the Secret Service (U.S. Treasury Department). The letter was mailed on March 13, and had been opened by mail room personnel.

(4) March 16, 1991, Watson received a letter from the Illinois State Bar Association. The letter was opened.

(5) On February 16, 1991, Watson sent a letter to David Anderson, an attorney with the Chicago Bar Association. The letter was returned to Watson opened on March 14, 1991. Although the letter was stamped "Return to Sender," Watson believes prison officials never mailed the letter because the stamp on the letter had not been cancelled by the sending and receiving post offices.

(6) On December 20, 1990, Watson received a letter from the State of Illinois Legislative Information System. The letter was postmarked December 10, 1990, and had been opened by mail room personnel.

(7) December 19, 1990, Watson received a letter from the U.S. Secretary of Defense. Mail room personnel had opened the letter.

(8) December 17, 1990, Watson received a letter from U.S. Department of Education. The letter had been opened.

(9) November 20, 1990, Watson received a letter from U.S. Senator David Durenberger that had been opened by mail room personnel. When Watson asked the mail room officer (E. Shelton) why the letter was opened, Shelton told Watson he did not know.

(10) May 24, 1990, Watson received a letter from the Clerk of the United States Court of Appeals for the Seventh Circuit. The letter was marked "Legal Mail, open only in the presence of the prisoner," but mail room personnel had opened the letter.

(11) On December 26, 1990, Watson sent a letter to Rob Warden, Legal Counsel for the Chicago Lawyer. The letter was returned to Watson unopened and stamped "Return to Sender," but Watson believes it was never mailed because the stamp was not cancelled.

(12) On April 15, 1991, Watson sent a letter to Robert W. Kastenmeir, Chairman

of the Subcommittee on Courts, Civil Liberty, and Administration of Justice. The letter was returned to Watson unopened on December 31, 1991. The stamp on this letter had been cancelled by the sending and receiving post offices.

(13) November 3, 1990, Watson sent a letter to the Executive Director of the National Veterans' Law Center. The letter was returned to Watson unopened, stamped "Return to Sender," on November 13.

(14) November 3, 1990, Watson sent a letter to the Chief Legal Counsel of the NAACP in New York. The letter was returned, unopened, on November 16, 1990. The letter was marked "Return to Sender," and the stamp had been cancelled.

(15) November 3, 1990, Watson sent a letter to the Executive Director and Chief Legal Counsel for the National Lawyers' Guild. The letter was returned on November 26, unopened, marked "Return to Sender," and the stamp had been cancelled.

(16) December 26, 1990, Watson sent a letter to the Executive Director of the Federal Information Center. The letter was returned to Watson unopened, stamped "Return to Sender," and the stamp had been cancelled.

(17) May 20, 1990, Watson sent a letter to the Chief Administrator of WFLD T.V. 32, a local television station. The letter was returned to Watson opened. The stamp had not been cancelled.

(18) On March 15, 1991, Watson received a letter from the Federal Bar Association. The letter had been opened by mail room personnel.

(19) On September 4, 1990, Watson submitted for mailing eleven sealed letters to various government officials. Along with the letters, Watson had submitted money vouchers for postage. Of these eleven letters, several were directed to IDOC officials. These letters were mailed by mail room personnel. The following letters were returned because Watson had insufficient funds in his trust account to cover the postage.

(a) Legislative Support Service and Information;

(b) U.S. Government, Superintendent of Documents;

(c) two letters to the Chief Executive Authority of the Central Intelligence Agency;

(d) Department of Health and Human Services, Social Security Administration, Director of Records;

(e) Executive Director, Federal Information Center.

Mail room officials instructed Watson that these letters would not be mailed unless they were submitted according to IDOC Rules: unsealed and with a sufficient money voucher.

(20) On June 18, 1991, Watson received a letter from the University of Illinois at Chicago, informing him that his Pell Grant application had been returned by the post office as undeliverable.

(21) On March 4, 1991, Watson sent a letter to John W. DeMoss, an attorney with the Illinois State Bar Association. On March 5, the letter was returned to Watson, opened, with a notice informing Watson that DeMoss was not a registered attorney.

(22) July 30, 1991, Watson sent a letter to the Executive Director of the U.S. Government Federal Information Center. The letter was returned on July 31, opened, with a notice informing Watson that the letter did not qualify as legal or privileged mail.

(23) On February 28, 1991, Watson sent the following mail to the mail room for delivery:

(a) George Ripplinger, Jr., Attorney, Illinois State Bar Association;

(b) John Clendenin, President and Attorney, Randolph County Bar Association;

(c) Maurice E. Bone, Attorney, Vice President, Illinois State Bar Association;

(d) Mark Goldenberg, President and Attorney, Tri-city Bar Association;

(e) Bruce N. Cook, Attorney, President, St. Clair Bar Association;

(f) John W. DeMoss, Attorney, Executive Director, Illinois State Bar Association;

(g) James N. Grameanos, Attorney, Vice President, Federal Bar Association;

(h) Elizabeth Levy, Secretary: Attn: Joseph R. Brown, Attorney, President, Madison County Bar Association;

(i) John G. Blanch, III, Attorney, Executive Staff Director, Federal Bar Association;

(j) Amiel Cueto, Attorney, President, East St. Louis Bar Association.

All of these letters were returned opened to Watson on March 4, 1991. Along with the letters was a notice informing Watson that all of the above listed letters would have to be submitted unsealed and with money vouchers for postage. The notice further informed Watson that letters to bar associations were not considered "legal mail" under IDOC Rules. Watson brought this matter to the attention of several prison officials. According to Watson, one officer, Lieutenant Price assured Watson that he would call the mail room, and advised Watson to resubmit the letters unsealed for mailing.

(24) On March 5, 1991, Watson resubmitted the above letters to the mail room, sealed and without a money voucher. All the letters were opened and returned to Watson again.

(25) On July 16, 1991, Watson received a letter from the U.S. District Court for the Southern District of Illinois in response to enquiries Watson made concerning documents he had mailed to the court. The letter informed Watson that the court had received his documents and returned stamped copies to him in the mail. Watson claims he never received those documents.

(26) On October 15, 1991, Watson received a letter from the U.S. District Court for the Northern District of Illinois. The letter was postmarked October 9, 1991. Watson charges mail room officials with the delay.

(27) On October 21, 1991, Watson submitted two letters for mailing: one to the Chief Administrative Officer of the Central Intelligence Agency, and one to the National Scholarship Service. Both letters were returned stamped "Return to Sender."

(28) July 31, 1991, Watson sent a letter to CIA Director William Webster.

(29) August 20, 1991, Watson sent a letter to the Director of the Department of Professional Regulation. The letter was returned to Watson opened.

(30) October 21, 1991, Watson received a letter from the Justice Department. The letter was postmarked October 16, 1991. Watson charges mail room personnel with the delay.

(31) October 22, 1991, Watson received a letter from the Central District of Illinois. Watson claims the letter was delayed for five days by mail room personnel.

(32) On October 28, 1991, Watson received a letter from the Northern District of Illinois. Watson charges mail room personnel with delaying the letter for four or five days.

## Discussion

 It is well settled that prison inmates are not stripped of all First Amendment rights at the prison gate. *See Turner v. Safely,* 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987); *Procunier v. Martinez,* 416 U.S. 396, 408, 94 S.Ct. 1800, 1809, 40 L.Ed.2d 224 (1974) (overruled in part, not relevant here, by *Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989)); *Martin v. Brewer,* 830 F.2d 76, 77 (7th Cir.1987). Furthermore, the Fourteenth Amendment affords prisoners a due process right to adequate, effective, and meaningful access to the courts. *See Bounds v. Smith,* 430 U.S. 817, 824, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72 (1977); *Wolff v. McDonnell,* 418 U.S. 539, 577–80, 94 S.Ct. 2963, 2985–86, 41 L.Ed.2d 935 (1974); *Williams v. Lane,* 851 F.2d 867, 878 (7th Cir.1988), *cert. denied,* 488 U.S. 1047, 109 S.Ct. 879, 102 L.Ed.2d 1001 (1989). As a corollary of both the prisoner's right to access to the courts and his limited free speech rights, a prisoner has a right to be free from certain interference with his "privileged" or "legal" mail.

*See Procunier,* 416 U.S. at 418–19, 94 S.Ct. at 1814; *Wolff,* 418 U.S. at 577, 94 S.Ct. at 2985; *Crowder v. Lash,* 687 F.2d 996, 1004 (7th Cir.1982).

In an effort to balance the competing interests of the prisoners' limited constitutional rights and the legitimate security concerns of the institutions, IDOC developed its rules and guidelines concerning prisoner mail. As noted above, these rules have deemed constitutional on their face. *See Gaines v. Lane,* 790 F.2d 1299 (7th Cir.1986). The mail at issue in this case can be divided into several categories.

### Non–Privileged Mail According to IDOC Rules

■ The following letters were sent to or from Watson and do not fall within the categories of privileged mail according to IDOC Rules. The Federal Information Center (four letters, ¶¶ 1, 16, 19(e), and 22); The Secret Service (U.S. Treasury Department) (¶ 3); State of Illinois Legislative Information System (¶ 6); U.S. Secretary of Defense (¶ 7); U.S. Department of Education (¶ 8); Chief Administrator of WFLD T.V. 32 (¶ 17); Legislative Support Service and Information (¶ 19(a)); U.S. Government, Superintendent of Documents (¶ 19(b)); various officials of the Central Intelligence Agency (¶¶ 19(c), 27, 28); Department of Health and Human Services, Social Security Administration, Director of Records (¶ 19(d)); the University of Illinois at Chicago (¶ 20); the Director of the Department of Professional Regulation (¶ 29).[2]

All of these letters were handled by prison officials according to IDOC Rules. In other words, if Watson attempted to mail such a letter as privileged mail (i.e. sealed and without a money voucher) it was opened and returned to him; if Watson received such a letter, it was opened and inspected by prison officials. Clearly under IDOC Rules, prison officials handled this mail correctly. The question is whether Watson's more expansive

definition of privileged mail should apply in these instances.

In *Stone–El v. Fairman,* 785 F.Supp. 711 (N.D.Ill.1991), this court had occasion to address similar contentions of a prisoner with respect to letters he attempted to mail to the Acting Chief Diplomatic Officer of the National Archives and Records Administration, and the Illinois Secretary of State. In rejecting a more expansive definition of privileged mail, this court relied upon the reasoning of an analogous case, *Mahler v. Slattery,* 489 F.Supp. 798, 800 (E.D.Va.1980), where the court rejected an inmate's argument that privileged mail should "encompass mail to members of Congress and also any individuals to whom he wished to address questions relating to a case." The court finds the same analysis applicable here. The fact that Watson may have been attempting to gather information relevant to a pending lawsuit does not transform otherwise ordinary mail into privileged correspondence. Since none of the letters were to or from attorneys and none fall within the categories of privileged mail detailed in the IDOC Rules, the court finds that defendants' handling of this mail was proper. Accordingly, the processing of this mail according to IDOC Rules does not give rise to a constitutional violation.[3]

### Legal Mail

Much of the mail discussed in Watson's Amended Complaint may be loosely classified as legal mail. Within this broad category, several subcategories emerge from an examination of the pleadings: (1) letters from a court to Watson; (2) letters from a bar association to Watson; and (3) letters from Watson to an attorney, bar association, or legal assistance organization. The court will discuss each subcategory separately.

### A. Letters to Watson from a Court

■ The following mail was received by Watson: June 21, 1991, U.S. District Court,

---

**2.** The paragraph references in this discussion correspond to the numbered paragraphs detailed in the factual discussion section of this opinion; they do not correspond to the paragraphs in Watson's Amended Complaint.

**3.** With respect to the letter to WFLD T.V. 32 (¶ 17), the court notes that the Seventh Circuit in *Gaines v. Lane,* 790 F.2d 1299, 1307 (7th Cir. 1986), held that mail from an inmate to the news media is not entitled to special status and need not be treated as privileged mail by the IDOC.

Southern District of Illinois (¶ 2) (delayed seven days); May 24, 1990, U.S. Court of Appeals for the Seventh Circuit (¶ 10) (opened by mail room personnel outside of Watson's presence); June 16, 1991, U.S. District Court, Southern District of Illinois (¶ 25) (informing Watson that it had sent him stamped copies of documents, which Watson claims he never received); October 15, 1991, U.S. District Court, Northern District of Illinois ((¶ 26) (delayed six days); October 22, 1991, U.S. District Court, Central District of Illinois (¶ 31) (delayed five days); October 28, 1991, U.S. District Court, Northern District of Illinois (¶ 32) (delayed four or five days).

In *Stone–El v. Fairman,* 785 F.Supp. at 715, this court rejected an inmate's claim that his constitutional rights were violated when prison officials opened outside of the inmate's presence mail addressed to him from a court clerk. In so holding, the court found the following language from *Martin v. Brewer,* 830 F.2d 76 (7th Cir.1987), instructive.

> [W]ith minute and irrelevant exceptions all correspondence from a court to a litigant is a public document, which prison personnel could if they want inspect in the court's files. It is therefore not apparent to us why it should be regarded as privileged and how [plaintiff] could be hurt if the defendant read those documents before or after [plaintiff] does.

*Id.* at 78. Accordingly, opening mail from a court clerk outside of Watson's presence (¶ 10) did not violate the Constitution. ·

■ Watson's remaining claims with respect to mail from the courts concern delay, and in one instance, allegedly not receiving copies of documents returned to him by the court. As to the delay, the court notes that a certain amount of delay is simply inevitable and should be expected in an institution the size of Stateville. Moreover, Watson often fails in his calculations to take into consideration weekends and holidays, both of which add to the normal lag-time between when a letter is posted and when it is received by the addressee. The court finds it highly unlikely, therefore, that the defendants intentionally delayed Watson's court mail.[4]

More importantly, Watson has failed to state a claim of denial of access to the courts. Unless a restriction placed upon an inmate's access to the courts is one that "completely prevents the prisoner, or a person acting in the prisoner's behalf, from performing preliminary legal research," a showing of prejudice is a required element of a right-of-access claim. *Jenkins v. Lane,* 977 F.2d 266, 269 (7th Cir.1992) *(per curiam ).* Watson has not demonstrated that any delay in receiving court mail prejudiced any pending litigation. Nor does Watson claim that he was prejudiced by not receiving stamped copies of the documents from the Southern District of Illinois (¶ 25). If Watson did not retain copies of those documents for his files, then all he had to do was write the court and ask for copies. Nothing indicates that Watson attempted to do this. Accordingly, since Watson fails to show any prejudice caused by the defendants' handling of mail he received from court personnel, the court grants summary judgment for defendants as to these claims.

**B.** *Letters from a Bar Association to Watson*

On March 16, 1991, Watson received a letter from the Illinois State Bar Association (¶ 4). The letter had been opened by mail room personnel. On March 15, 1991, Watson received a letter from Michael E. Campialia, Assistant Executive Staff Director of the Federal Bar Association (¶ 18). This letter had also been opened by mail room personnel. Neither letter had been specifically identified by the sender as "legal" or "privileged" mail, and neither letter bore the name of a specific attorney. They were both simply letters from bar associations addressed to Watson.

---

4. *See Valiant–Bey v. Morris,* 829 F.2d 1441, 1444 n. 5 (8th Cir.1987):
 Absent claims of intentional delay, ... mere delay in delivery of prisoner mail, especially any delay that occurs over the weekend, is not unreasonable and thus fails to raise a constitutional question. "These are de minimis delays unavoidable in any large institution."
 (Citations omitted.)

█ Letters from bar associations, as such, do not fall within the definition of "legal mail" outlined in the IDOC Rules. Since the letters did not bear the name of a specific attorney, and did not have any markings to indicate that they contained privileged communications, the mail room personnel acted according to established prison guidelines by opening such mail. In *Martin v. Brewer*, 830 F.2d at 78, the Seventh Circuit upheld a federal prison policy of opening all mail that was not specifically marked "Special Mail— Open only in the presence of the inmate." In that case, the court stated:

> We reject [plaintiffs'] complaint with respect to mail from attorneys. To assist prison personnel in determining whether mail should be treated as special mail, the regulations require as we noted earlier that the prisoner advise his attorney to place the special legend on the envelope. This requirement is easy to comply with and therefore presents no serious constitutional question; the cost of compliance being essentially zero, the restriction on free speech is trivial; so is the restriction on the inmate's access to the courts.

(Citations omitted.) *Id.* Since neither of the letters from bar associations to Watson contained a special legend indicating that the letter contained privileged material and instructing prison officials to open the letter only in the presence of Watson, the court finds that defendants acted within their rights in opening these letters. Accordingly, the court grants defendants' motion for summary judgment as to the two letters from bar associations (¶¶ 4 and 18).

## C. Letters from Watson to Attorneys

█ Watson sent the following letters to the following attorneys: David Anderson, an attorney with the Chicago Bar Association, February 16, 1991, (returned opened; Watson believes prison officials never mailed the letter because the stamp on the letter had not been cancelled by the sending and receiving post offices) (¶ 5); Rob Warden, Legal Counsel for the Chicago Lawyer, December 26, 1990, (returned unopened and stamped "Return to Sender;" the stamp had not been cancelled) (¶ 11); Executive Director of the National Veterans' Law Center, November 3, 1990, (returned unopened, stamped "Return to Sender," with the stamp cancelled) (¶ 13); Chief Legal Counsel of the NAACP in New York, November 3, 1990, (returned, unopened, marked "Return to Sender," with stamp cancelled) (¶ 14); Executive Director and Chief Legal Counsel for the National Lawyers' Guild, November 3, 1990, (returned unopened, marked "Return to Sender," with stamp cancelled) (¶ 15); John W. DeMoss, an attorney with the Illinois State Bar Association, March 4, 1991, (returned opened, with a notice informing Watson that DeMoss was not a registered attorney) (¶ 21); George Ripplinger, Jr., Attorney, Illinois State Bar Association, February 28, 1991, (returned opened) (¶ 23(a)); John Clendenin, President and Attorney, Randolph County Bar Association, February 28, 1991, (returned opened) (¶ 23(b)); Maurice E. Bone, Attorney, Vice President, Illinois State Bar Association, February 28, 1991, (returned opened) (¶ 23(c)); Mark Goldenberg, President and Attorney, Tri-city Bar Association, February 28, 1991, (returned opened) (¶ 23(d)); Bruce N. Cook, Attorney, President, St. Clair Bar Association, February 28, 1991, (returned opened) (¶ 23(e)); John W. DeMoss, Attorney, Executive Director, Illinois State Bar Association, February 28, 1991, (returned opened) (¶ 23(f)); James N. Grameanos, Attorney, Vice President, Federal Bar Association, February 28, 1991, (returned opened) (¶ 23(g)); Joseph R. Brown, Attorney, President, Madison County Bar Association, February 28, 1991, (returned opened) (¶ 23(h)); John G. Blanch, III, Attorney, Executive Staff Director, Federal Bar Association, February 28, 1991, (returned opened) (¶ 23(i)); Amiel Cueto, Attorney, President, East St. Louis Bar Association, February 28, 1991, (returned opened) (¶ 23(j)).

Three of the above listed letters appear without question to have been handled properly by prison officials. The letters to the Executive Director of the Veterans' Law Center, the Chief Legal Counsel of the NAACP, and the Chief Legal Counsel for the National Lawyers' Guild, were all returned to Watson unopened and marked "Return to Sender." It is clear from the exhibits attached to Watson's complaint that the stamps

on these letters had been cancelled, thus there is no question as to whether prison officials mailed these letters. Obviously, Watson simply addressed the letters incorrectly and they were returned by the post office. Accordingly, the court grants defendants' motion for summary judgment as to the letters described in ¶¶ 13, 14, and 15 of this opinion.

With respect to the remaining letters addressed to attorneys, all were returned to Watson opened by prison officials.[5] *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1973), recognized that prison inmates have an interest protected by the constitution in corresponding with their attorneys. In reliance upon *Wolff* several courts have held that mail to or from an attorney cannot be opened except in the presence of the inmate. *See Guajardo v. Estelle*, 580 F.2d 748, 758 (5th Cir.1978); *Ramos v. Lamm*, 639 F.2d 559, 582 (10th Cir.1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981); *Jensen v. Klecker*, 648 F.2d 1179, 1182 (8th Cir.1981). *Wolff* did not, however, define what was meant by "legal mail."

In *Bach v. Illinois*, 504 F.2d 1100, 1102 (7th Cir.), *cert. denied*, 418 U.S. 910, 94 S.Ct. 3202, 41 L.Ed.2d 1156 (1974), the Seventh Circuit wrote:

> [a]n inmate's need for confidentiality in his communications with attorneys through whom he is attempting to redress his grievances is particularly important. We think that contact with an attorney and the opportunity to communicate privately is a vital ingredient to the effective assistance of counsel and access to the courts. *Adams v. Carlson*, 488 F.2d 619 (7th Cir. 1973).

*See also Harrod v. Halford*, 773 F.2d 234, 235 (8th Cir.1985), *cert. denied*, 476 U.S. 1143, 106 S.Ct. 2254, 90 L.Ed.2d 699 (1986) ("The purpose of opening legal mail in the inmate's presence is to protect his attorney/client privilege and to protect the confidentiality of other legal matters.") In *Bach*, the court held that an inmate had a right to be present when prison officials opened incoming mail from attorneys. Defendants argue that since none of the attorneys with whom Watson attempted to communicate actually represented him in any pending litigation, the letters at issue in this case do not qualify as legal mail.

In *Faulkner v. McLocklin*, 727 F.Supp. 486 (N.D.Ind.1989), Judge Miller of the Northern District of Indiana held that a letter from the ACLU qualified as legal mail. Rejecting defendants' argument that the letter was not legal mail because it was not from an attorney who was actually representing the inmate, the court noted:

> [t]he court cannot agree that "legal mail" is subject to so stingy a definition. Such organizations exist to provide legal services to (at least some of) those who request legal services, and employ attorneys for that purpose. That the organizations themselves are not licensed to practice law and employ persons who are not licensed to practice law does not set them apart from law firms. An inmate who writes the ACLU or one of its chapters generally does so in the hope of receiving legal representation or advice, and is likely to describe his legal problem in the course of doing so; the response is likely to refer to the problem described, giving rise to the dangers discussed by the *Bach* court.

*Id.* at 489–90. (Footnotes omitted.)

Like the hypothetical inmate described in *Faulkner*, Watson attempted to obtain legal representation by contacting a number of attorneys through the mail. Watson thus had an interest in maintaining confidentiality and privacy in these communications. The fact that Watson had not actually retained any of the attorneys with whom he attempted to communicate does not mean that prison officials were free to open and inspect clearly marked confidential communications between Watson and his potential legal representatives. Moreover, since all of these letters were *outgoing* legal mail, the prison officials' interest in maintaining internal discipline and security was consequently weaker. As the

---

5. The letter to Rob Warden, Legal Counsel for the Chicago Lawyer, was returned to Watson unopened. An issue of fact exists, however, as to whether prison officials ever mailed this letter.

Fifth Circuit stated in *Taylor v. Sterrett,* 532 F.2d 462, 474 (5th Cir.1976):

> The content of ... outgoing mail cannot, except on the most speculative theory, damage the security interests of jail administration.... As a general proposition, it must be assumed that mail addressed to government offices or licensed attorneys containing contraband or information about illegal activities will be treated by the recipients in a manner that cannot cause harm.

(Citations Omitted.) *See also Davidson v. Scully,* 694 F.2d 50, 53 (2d Cir.1982) (outgoing mail addressed to governmental agencies entitled to greater protection). Accordingly, the court denies defendants' motion for summary judgment as to the letters Watson attempted to mail to attorneys. (¶¶ 5, 21, 23(a)–(j).)

## Other Mail

■ The following letters are also described in Watson's Amended Complaint. (1) November 20, 1990, Watson received a letter from U.S. Senator David Durenberger that had been opened by mail room personnel (¶ 9). (2) April 15, 1991, Watson sent a letter to Robert W. Kastenmeir, Chairman of the Subcommittee on Courts, Civil Liberty, and Administration of Justice (¶ 12). The letter was returned to Watson unopened on December 31, 1991. The stamp on this letter had been cancelled by the sending and receiving post offices. (3) June 18, 1991, Watson received a letter from the University of Illinois at Chicago, informing him that his Pell Grant application had been returned by the post office as undeliverable (¶ 20). (4) October 21, 1991, Watson received a letter from the Justice Department (¶ 30). The letter was postmarked October 16, 1991. Watson charges mail room personnel with the delay. ·

With respect to the letter addressed to Watson from Senator David Durenberger (¶ 9), the court finds that an issue of fact exists as to whether this letter qualifies as privileged mail. Under IDOC Rules, mail from federal legislators is classified as privileged. Nonetheless, the mere fact that the conduct in question violates IDOC Rules does not per se form the basis of § 1983

liability. *Kompare v. Stein,* 801 F.2d 883, 888 (7th Cir.1986); *Wells v. Franzen,* 777 F.2d 1258, 1264 n. 4 (7th Cir.1985). In *Martin v. Brewer,* 830 F.2d at 78, the Seventh Circuit recognized that some mail from public officials may qualify as privileged mail and thus be entitled to the same protections as mail to or from attorneys. The court noted further, however, that "much institutional mail is 'junk mail'—not a personal communication to a known addressee and not containing any materials intended for his eyes only." *Id.* On the basis of the record currently before the court, it cannot be determined whether the letter discussed in Watson's Amended Complaint contained confidential material or was simply "junk mail." Accordingly, since an issue of fact exists concerning the nature of the communication between Senator Durenberger and Watson, the court denies defendants' motion for summary judgment as to this letter.

The letter to Robert W. Kastenmeir (¶ 12) appears to have been handled properly by mail room personnel. The letter was simply returned to Watson by the post office. Similarly, the problem with Watson's Pell Grant application (¶ 20) was not caused by defendants, but simply arose out of a confusion concerning Watson's mailing address. Finally, the five-day delay Watson suffered in receiving his letter from the Justice Department does not establish a constitutional violation. (*See* the discussion at note 4 *supra.*) Accordingly, the court grants defendants' motion for summary judgment as to these letters.

## Qualified Immunity

■ Defendants contend that, if any of their conduct interfered with Watson's constitutional rights, they are entitled to qualified immunity. The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Whether an official is protected by qualified immunity turns upon the objective

legal reasonableness of the action, in light of legal rules clearly established at the time the action was taken. The contours of the right allegedly violated must be sufficiently clear so that a reasonable official would understand that what he or she is doing violates that right. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). The court finds that Watson's right to confidentiality in his communications with legal representatives through the mail was clearly established at the time of the incidents in question in this case. *See Adams v. Carlson*, 488 F.2d 619, 631 (7th Cir.1973), where the Seventh Circuit stated:

> Thus there has been widespread agreement that communications by post between an inmate and his attorney are sacrosanct, subject only to tests on incoming mail for the presence of contraband which fall short of opening it when the inmate is not present.

(Citations omitted.) Defendants' interference with Watson's privileged legal mail thus violated clearly established constitutional law. Accordingly, the court finds that defendants are not entitled to qualified immunity in this case.

### Watson's Supplemental Complaint

Finally, Watson submitted a Supplemental Complaint detailing more instances of interference with his mail. In a minute order dated February 11, 1992, the court informed defendants that they need not respond immediately to Watson's Supplemental Complaint. Thus, none of the allegations contained therein have been addressed by defendants' motion for summary judgment. All of the mail listed in the Supplemental Complaint, however, falls into one of the categories discussed in this opinion. Accordingly, many of the supplemental claims can be disposed of sua sponte. The following is list of the mail referred to in the Supplemental Complaint.

On November 4, 1991, Watson attempted to mail five letters as privileged mail (i.e. submitted to prison officials sealed and without money vouchers). All the letters were returned to Watson, unopened, with a notice informing him that they must be submitted in accordance with IDOC Rules. The letters were addressed to (1) the Director of the Department of Public Health (Supp. ¶ 9(a)); [6] (2) Bernard P. Killian, Deputy Director of the Environmental Protection Agency (Supp. ¶ 9(b)); (3) the Director of Water Pollution Control for the Environmental Protection Agency (Supp. ¶ 9(c)); (4) the Director of Inspection and Operation for the Department of Nuclear Safety and Office of Environmental Safety (Supp. ¶ 9(d)); and (5) the Executive Director of the Intergovernmental Cooperation Commission (Supp. ¶ 9(e)). On November 7, 1991, Watson received a letter from the Central Intelligence Agency that had been opened by prison officials (Supp. ¶ 10(a)). On August 1, 1991, Watson received a letter from the Deputy Director of the Environmental Protection Agency that had been opened by prison officials (Supp. ¶ 11). None of this mail qualifies as privileged mail, and thus prison officials did not violate Watson's constitutional rights by requiring him to submit the letters unsealed or by opening the letters outside of his presence. *See* the discussion of non-privileged mail *supra* at pages 9–10 of this opinion.

On November 27, 1991, Watson submitted for mailing seventeen letters, sealed and accompanied by money vouchers. Of those seventeen letters, the following four were mailed by prison officials: (1) H. Stuart Cunningham, Clerk of the U.S. District Court for the Northern District of Illinois (Supp. ¶ 12(a)); (2) Alderman Timothy Evans—4th Ward (Supp. ¶ 12(o)); (3) Marvin E. Aspen, U.S. District Judge (Supp. ¶ 12(p)); and (4) H. Stuart Cunningham (Supp. ¶ 12(q)). The following letters were returned to Watson: (1) the Director of the U.S. Department of Education (Supp. ¶ 12(b)); (2) the Chicago Sun Times (Supp. ¶ 12(c)); (3) Harry Porterfield—WLS T.V. (Supp. ¶ 12(d)); (4) Gladys Lindsey—WMAQ T.V. (Supp. ¶ 12(e)); (5) Walter Jacobsen—WBBM T.V. (Supp. ¶ 12(f)); (6) Mark Rosati—WFLD T.V. (Supp. ¶ 12(g)); (7) Shirley Clark—WGCI Radio (Supp. ¶ 12(h)); (8) Vernon Jarrett—Chicago Sun Times (Supp. ¶ 12(i)); (9) Bernard Colleran—WGN T.V. (Supp. ¶ 12(j)); (10) Mike Royko—Chicago Tribune (Supp.

---

**6.** The paragraphs of the Supplemental Complaint will be referred to as "Supp. ¶."

¶ 12(k)); (11) Melody Spann—WVON Radio (Supp. ¶ 12(*l* )); (12) Harry Locke—Chicago Defender (Supp. ¶ 12(m)); and (12) Charles Armstrong—Chicago Metro Newspaper (Supp. ¶ 12(n)).

The letters addressed to the court clerk, this judge, and Alderman Evans were all handled properly by prison officials, and thus these allegations are dismissed. The letter addressed to the Deputy Director of the Environmental Protection Agency was not privileged mail. Accordingly, the court sua sponte dismisses this allegation. Finally the letters addressed to members of the news media are not entitled to special consideration. (*See supra* note 3.) The court therefore denies any claim with respect to these letters.

On July 18, 1991, Watson received two letters from the Federal Student Aid Program (Supp. ¶¶ 13(a) and (b)). The letters had been opened by mail room personnel. Since these letters were not privileged mail, the court sua sponte dismisses any claims arising out of these allegations.

■ On November 15, 1991, prison officials returned to Watson a letter he had attempted to mail to the Executive Director of the Prison Law Collective—Legal Counsel (Supp. ¶ 14). The letter had been opened. This letter may very well have been privileged legal mail. Accordingly, the court directs the defendants to answer or otherwise plead to the allegation contained in ¶ 14 of Watson's Supplemental Complaint within twenty days of the date this order is entered on the court's docket.

On November 18, 1991, Watson received, unopened, a letter from a Seattle, Washington, law firm (Supp. ¶ 15). Watson claims defendants delayed delivery of the letter for six days. On the same day, Watson received, unopened, a letter from the Deputy Director of the IDOC (Supp. ¶ 16), which Watson claims defendants delayed for five days. On December 2, 1991, Watson received, unopened, one letter from the U.S. Department of Justice (Supp. ¶ 17(a)), and one letter from the U.S. Marshall (Supp. ¶ 17(b)). Watson claims defendants delayed delivery of these letters for seven days. All of the delays alleged by Watson appear to fall within the

de minimis category, as discussed *supra* in note 4. Moreover, Watson has not alleged that any of the delays prejudiced any pending litigation. Accordingly, the court sua sponte dismisses the allegations contained in ¶¶ 15, 16, and 17 of Watson's Supplemental Complaint.

■ On December 5, 1991, Watson attempted to mail a large package to the U.S. Federal Information Center (Supp. ¶ 18). The package was opened and returned to Watson the next day. On December 12, 1991, Watson attempted to mail another large package addressed to the Director, in care of the legal staff, of the Federal Information Center (Supp. ¶ 19). This package was also opened and returned to Watson by prison staff. Neither of these packages qualifies as privileged mail. The fact that Watson directed the second package to the care of the legal staff of the Federal Information Center does not transform this package into legal mail. Watson has not indicated that he was attempting to obtain legal representation by mailing this package. Accordingly, the court sua sponte dismisses the allegations contained in ¶¶ 18 and 19 of Watson's Supplemental Complaint.

■ On November 26, 1990, Watson received a letter from the U.S. House of Representatives (Supp. ¶ 20). The letter had been opened by mail room personnel. Since this letter may be a privileged communication, the court directs defendants to answer or otherwise plead to the allegation contained in ¶ 20 of Watson's Supplemental Complaint within twenty days of the date this order is entered on the court's docket.

■ Finally, Watson claims in ¶ 22 of his Supplemental Complaint that, on January 2, 1992, he received notice from mail room personnel that certain mail addressed to Watson from the Ford Motor Company had been opened and returned to the sender. The reasons stated for this action was that the letter contained contraband—an ink pen. Non-privileged mail may be opened and inspected for contraband by prison officials. *Procunier v. Martinez,* 416 U.S. at 412–13, 94 S.Ct. at 1811. Accordingly, the court sua

sponte dismisses the claim contained in ¶ 22 of Watson's Supplemental Complaint.

### Conclusion

For all of the foregoing reasons, Watson's motion for summary judgment is denied. Defendants' motion for summary judgment is granted as to the allegations described in ¶¶ 1, 2, 3, 4, 5, 6, 7, 8, 10, 12, 13, 14, 15, 16, 17, 18, 19(a) through (e), 20, 22, 25, 26, 27, 28, 29, 30, 31, and 32 of this opinion. Defendants' motion for summary judgment is denied as to the allegations described in ¶¶ 9, 11, 21, and 23(a) through (j) of this opinion. The court sua sponte dismisses the allegations referred to in ¶¶ 9(a) through (e), 10, 11, 12(a) through (n), 13(a) and (b), 15, 16, 17, 18, 19, and 22 of Watson's Supplemental Complaint. Defendants are ordered to answer or otherwise plead to the allegations in ¶¶ 14 and 20 of the Supplemental Complaint within twenty days of the date this order is entered on the court's docket.